WILLIAM FARREL, RESPONDENT, *v.* JAMES PIN-
GREE, APPELLANT.

CONSTRUCTION OF STATUTES.—RETROACTIVE EFFECT.—A statute will
not be given a retrospective effect, unless its terms show clearly·
a legislative intention that it should operate retrospectively, and
where an act, amending an act relating to the terms of County
Treasurers substituted the words two years for the words four
years, a person elected to the office before the term of the incum-
bent who was elected and had served almost two years before
the passage of the amendatory act, had expired, will not be
entitled to the office as against the incumbent.

APPEAL from a judgment of the district court of the first district.

The facts found by the court are as follows:

1st. That at the general election held in Weber County, in August, 1884, R. P. Harris was duly elected county treasurer of Weber County, Utah. That he thereafter, and about the first of September, 1884, duly qualified and entered upon the discharge of his duties as county treasurer.

2d. That on the 14th day of February, 1887, R. P. Harris died. That he never prior to his death resigned his office of county treasurer, and was never removed therefrom.

3d. That since his death no person has been appointed to fill said office.

4th.   That at the regular general election in August, 1886, the defendant was elected to said office by a majority of the votes cast at said election for said office, and thereafter received a certificate of election and qualified as such treasurer.   That he was in all respects possessed of all the qualifications required by law to fill said office.   That at some time in the year 1886, and about the month of October, the defendant acquired possession of the books, papers and insignia of the office of county treasurer of said Weber County, and from that time down to the present has continued to hold said office and to exercise the functions and receive the emoluments thereof, and to keep possession of the books, papers and insignia belonging thereto.

5th.   That at the general election held in August, 1887, the plaintiff was elected to the said office of county treasurer of Weber County, Utah, he having received a majority of all the votes cast for said office at said election.   That the plaintiff possessed all the qualifications required by law to render him competent to fill said office.   That thereafter he received his certificate of election and duly qualified to enter upon the discharge of his duties as such county treasurer.

6th.   That before the commencement of this action plaintiff demanded of the defendant that he deliver to plaintiff the books, papers and insignia of said office, all of which were then in defendant's possession.   That the defendant refused, and does yet refuse, to deliver any of said books, papers and insignia of said office to plaintiff, and he has hitherto excluded plaintiff from said office.

*Messrs. Richards & Rolapp,* for appellant.

Harris was not elected for an absolute term of four years, and the duration of his term must be ascertained and determined by law:   *People* v. *Brenham,* 3 Cal., 487.

The legislature had the power to change the length of the term at its pleasure:   *Christy* v. *Board of Supervisors,* 39 Cal., 12; *Taft* v. *Adams,* 3 Gray, (Mass.,) 130; *Hyde* v. *State,* 52 Miss., 665; *State* v. *Douglas,* 26 Wis., 428.

The office is subject, at all times, to the will of the power

which created it, without any regard to the wishes or convenience of the incumbents: *Newton* v. *Commissioners,* 100 U. S., 548; *Butler, et al.,* v. *Pennsylvania,* 10 How., 402; *People* v. *Squires,* 14 Cal., 12; *People* v. *Banvard,* 27 Cal., 475; *Bulyer* v. *Merrill,* 45 Cal., 557.

No matter what his right, it was created by, and entirely depended on, the statute, and when the statute ceased to exist, the right expired with it: *Tivey* v. *People,* 8 Mich., 131; *Town of Guilford* v. *Supervisors,* 3 Kern, 143; *Commonwealth* v. *Duane,* 1 Binney, 601; *Commonwealth* v. *Bacon,* 6 Sargeant & Rawle, 322; *Stoever* v. *Immal,* 1 Watts., 258; *Norris* v. *Crocker,* 13 How., 438; *Hampton* v. *Commonwealth,* 19 Pa. St., 329; *Williams* v. *Co. Com'rs.,* 35 Me., 345; *Butler* v. *Palmer,* 1 Hill, 330; .Sedgwick on Const. and Stat. Law, 129, 132; *Bailey* v. *Mason,* 4 Minn., 546; Bishop on Stat. Crimes, secs. 177a, 178a, 265. ̤ ·

*Messrs. Smith & Smith,* for respondent.

Cited *Rutherford* v. *Green's Heirs,* 2 Wheat., 203; *Dash* v. *Van Kleeck,* 7 Johns., 477, 5 Am. Dec., 291; *In re Tuller,* 79 Ill., 99, 22 Am. Rep., 170; *Peters* v. *Massey,* 33 Grattan, 368; 5 Cal., 357; 20 Michigan, 398; *State* v. *Ferguson,* 62 Mo., 77; *Kelsey* v. *Kendall,* 48 Vt., 24; *State* v. *Newark,* 40 N. J. L., 257.

In examining our approved text writers we find their views harmonize with those above stated: Broom's Legal Maxims, seventh Am. Ed., pages 34 and 35, and Cooley's Const. Lim., 546.

*Harris* v. *Brenham,* 3 Cal., 487 was overruled in *McKune* v. *Weller,* 11 Cal., 63.

BOREMAN, J.:

At the general election held in August, 1884, one Robert P. Harris was elected to the office of county treasurer of Weber county, under a statute which established the office, and provided that the term of office of the county treasurers should be four years and until their successors should be elected and qualified. Subsequently, on the 11th day of March, 1886, nearly two years after Harris' election, the

statute was amended by "striking out the word 'four,' " and "substituting the word 'two' in lieu thereof." At the general election in August, 1886, the defendant (Pingree) was elected to the office of treasurer of said county for the term of two years, upon the theory that Harris' term had expired at that time, under the statute as amended in the preceding March. Harris, having been elected for a term of four years, had two years yet to serve at that date, unless the amendment of March 11, 1886, had deprived him of the two years subsequent to the date of Pingree's election. Pingree entered upon the discharge of the duties of the office under his election in August, 1886, although Harris had not resigned, nor been removed from office. In February following, the date of Pingree's taking the office, Harris died. No one was appointed after Harris' death to fill the office, but Pingree continued in it. At the general election in August, 1887, the plaintiff was elected to said office, received his certificate, and was duly qualified to enter upon the discharge of the duties of the office, demanded the possession of the books, papers, and insignia of the office from the defendant, who was then in possession of them. The defendant having refused to deliver them up to him, the plaintiff brought this action, and upon the hearing of the case, the judgment being for the plaintiff, the defendant appealed to this court.

We learn from the appellant's brief that he claims the judgment of the lower court to have been erroneous, for the reason that the enactment of the 11th of March, 1886, operated at once as a vacation of the office then held by Harris, saving to the occupant the right to hold the office until his successor should be elected and qualified. The language of the brief is "that the effect of the amendment of March 11th, 1886, striking out the word 'four,' was to repeal the terms of office of all county treasurers then in office, so far as any term of years then unexpired might be, and simply to leave them to continue in office, or hold over until their successors should be elected and qualified." And the defendant further contends that, upon this theory, the fixed term of Harris expired at the

taking effect of the amendment or repeal, on the 11th of
March, 1886, and that therefore Harris could only hold
until his successor should be elected and qualified, after
that date, which he claims took place at the August elec-
tion of 1886, when the defendant was elected to the office,
and thereafter qualified.   There was no vacation of the
office, in express terms by the enactment of the 11th of
March, 1886.   The question then arises, was there such a
vacation by implication?   There was no repeal of the act
creating the office.   The amendment dealt only with the
length of the term of office.   It left all the residue of the
statute intact, and in full force.  If the legislature intended
to vacate the office, that intention must clearly appear be-
fore a court is warranted in saying it exists.   The defend-
ant claims that such intent is shown in the enactment de-
claring that the old statute "is hereby amended by strik-
ing out the word 'four.' "   But all that the striking out
clause vacates is the word "four."  Nothing else is pre-
tended in the act to be vacated.   That word is dropped out
of the statute, but the office is not dropped out.   It is
left to stand as it stood before.   The word "four," being
repealed, stricken out, and the residue of the statute be-
ing allowed to stand, Harris would have found himself,
upon the adoption of the amendment, on the 11th of
March, 1886, in an office, the term of which had no end.
His term would have been lengthened, instead of les-
sened, by the repeal or "striking out the word 'four;' "
and there could have been no sort of ground for
saying that under such circumstances any one else
could have, by any election or appointment, a better
right to the office.   He had been duly elected to
it nearly two years prior to that time, had not been
removed, nor had he resigned, and the office had not
been abolished.   Only the time limit had been removed.
But the true rule of construction is to take the whole of
a statute, and consider all of its parts together, and not to
take a fraction, and consider that by itself.   The amenda-
tory enactment of the 11th of March, 1886, not only con-
tained the words "striking out the word 'four,' " but it
also contained the words, "substituting the word 'two' in

lieu thereof." The striking out and the substitution were simultaneous acts. With the word "two" in place of "four," we are to consider the effect of the change. There is no authority or sound reason for holding that such amendment took effect as of August, 1884, nearly two years prior to its enactment. The defendant contends that although the statute took effect on the day of its passage, yet that it related back to the August of 1884, the date of Harris' election. We are at a loss to know why this is so. The amendment says nothing whatever about the enactment relating back two years, or any other time, prior to its passage, and we see nothing in the amendment upon which to hang an inference of that nature. We are not justified in adding to a statute something that the legislature never intended, or had in contemplation, in enacting the statute. The legislature had the power to have said so; but we are not now considering the power of the legislature, we are simply considering whether they had exercised that power.

The statute, with the interpretation sought to be placed upon it by the defendant, would be clearly retroactive. No court will hold a statute to be retroactive when the legislature has not said so, and there is no reason why it should be so, and where the statute is easily susceptible of another and reasonable construction. The general rule, as found in the books, is even stronger than we have stated. It is laid down in Broom's Legal Maxims that "laws should be construed as prospective, and not retrospective, unless they are expressly made applicable to past transactions, and to such as are still pending." Broom, Leg. Max., 34. And Cooley states the doctrine very definitely, as follows: "And it is a sound rule of construction that a statute should have a prospective operation only, unless its terms show clearly a legislative intention that it should operate retrospectively." Cooley, Const. Lim., 456. See also, Potter's Dwar. St., 164; *Ely* v. *Holton*, 15 N. Y., 595; *State* v. *Newark*, 40 N. J. Law, 558; *People* v. *Haskell*, 5 Cal., 357; *State* v. *Ferguson*, 62 Mo., 77; *Kelsey* v. *Kendall*, 48 Vt., 24; *Smith* v. *Auditor General*, 20 Mich., 398; *Peters* v. *Massey*, 33 Grat., 368;

*Rutherford* v. *Greene's Heirs*, 2 Wheat., 203; *In re Tuller*, 79 Ill., 99, 22 Amer. Rep., 170; *U. S.* v. *Arredondo*, 6 Pet., 733; *Dash* v. *Van Kleeck*, 7 Johns., 477, 5 Amer. Dec., 291.

It being clear, therefore, that the legislative intent that the amendment should be retrospective, does not appear, it is settled by an overwhelming weight of authority that the enactment of the 11th of March, 1886, had no retrospective or retroactive effect, but its operation is entirely prospective. The well-nigh two years that Harris had held the office of county treasurer could not, therefore, be counted as part of the two years' term of office provided for in the amendment. The two years contemplated in the enactment were some two years to begin at a time subsequent to its passage. The amendment found Harris in office. It did not vacate his office, nor abolish it. The amendment, if made applicable to him at all, simply told him that thereafter he could hold the office for two years. The word "thereafter" would, of course, mean after the amendment should go into effect, which would occur when there had been a publication of the enactment. Comp. Laws, p. 78, sec. 2. He would therefore be entitled to hold the office under the amendment, if it could apply to him, for the period of two years after publication of the amendment; and the time of such publication does not appear, nor is it material, as no doubt the publication took place shortly after its passage, and prior to the general election in August, 1886. But as we have seen if the amendment be at all applicable to Harris, he was under it authorized to hold the office two years following the enactment; and, consequently, the election of the defendants to the office at the general election in August, 1886, and before such two years had expired, was unauthorized by law. But the statute was in no way applicable to Harris. He held his office under a statute which had not been repealed nor had it in any manner been modified, except that the term of office after its passage was to be two instead of four years, as theretofore. No reference was made to the cases of persons then in office. The statute was wholly prospective, and related to terms of office in the future.

*People* v. *Haskell*, 5 Cal., 357; Cooley, Const. Lim., 456.
In the well-considered case of *Peters* v. *Massey*, 33 Grat.,
368, the court of appeals of Virginia laid down this doc-
trine in plain terms, and the contest in that case was in
some respects similar to that in the case at bar. Two cases
are referred to by the defendant, the one in Texas, and the
other in California, as being of a contrary character. The
Texas case of *Wright* v. *Adams*, 45 Tex., 134, simply
states the rule that where the duration of the term of
office is a question of doubt or uncertainty, the shortest
time is to be adopted. In the case at bar, the term of
office is not a question of such uncertainty or doubt as
was contemplated in that case. The principle inculcated
by that decision was that where the statute has left a
blank unprovided for by definite enactment, and there is a
doubt as to whom such blank should be allotted, the rule
should be that it should follow the policy of making "the
terms of office at the shortest periods which the conven-
ience of the public will permit. It cannot, as we take it,
be made to apply when the term of office is ascertainable
from the statute under the ordinary rules of construction.
If the ordinary rules of construction shall have been ap-
plied, and yet the matter is in doubt, the court must re-
solve that doubt in favor of the people, and adopt that
rule that contemplates a reference of the election back to
the people at the shortest period consistent with the pub-
lic convenience. The California case of *People* v. *Bren-
ham*, 3 Cal., 477, was a case such as we have described.
The charter of San Francisco provided that the first elec-
tion under it for city officers should be on the fourth Mon-
day of April, 1851, and thereafter annually at the general
election for state officers. The latter was then held in
September, and at the first general election, in September
of that year, the relator was elected mayor. The defend-
ant (Brenham) refused to yield it up. The statute had
made no definite provision as to whether the term of the
mayor that had first been elected should hold on until the
first general election, or to the next thereafter. No gen-
eral rules of construction could solve the doubt, and the
court was at sea. Under such circumstances, the court

held that the best rule to follow was that which was the established policy of the state, and it was to adopt the shortest period. These two cases cited by the defendant do not affect the general doctrine that the statute must be construed as prospective in its operations, and not retrospective. With that doctrine, which is so well settled, to guide us, the true intent of the legislature is made manifest, and there can exist no such doubt or uncertainty as to require the court to adopt, as a last resort, another rule which is not to be called into requisition, except when a question of policy, and not a rule of law, is to govern in the interpretation of a statute.

We find no errror in the action of the court below, and the judgment is therefore affirmed.

ZANE, C. J., and HENDERSON, J., concurred.