Richard D. MADSEN and Nancy Madsen, Boyd A. Swensen and Beatrice Swensen, Blaine Anderson and Sheree Anderson, Hope A. Hilton, Cynthia Hilton, Ralph M. Hilton, Gene Helland and the Middle East Foundation, Plaintiffs and Appellants,

v.

Mirvin D. BORTHICK, W. Smoot Brimhall, and John Does I to V, being former Commissioners of the Utah Department of Financial Institutions, Defendants and Appellees.

No. 19704.

Supreme Court of Utah.

Dec. 12, 1988.

Rehearing Denied March 10, 1989.

Daniel F. Bertch, Robert J. Debry, Phillip B. Shell, Salt Lake City, for plaintiffs and appellants.

David L. Wilkinson, Paul M. Warner, Stephen J. Sorenson, Salt Lake City, for defendants and appellees.

ZIMMERMAN, Justice:

Plaintiffs Richard D. and Nancy Madsen, Boyd A. and Beatrice Swensen, Blaine and Sheree Anderson, Hope A., Cynthia, and Ralph M. Hilton, Gene Helland, and the Middle East Foundation, all investors in the

now-defunct Grove Finance Company ("the investors"), brought suit against defendants Mirvin D. Borthick and W. Smoot Brimhall, former commissioners of the Utah Department of Financial Institutions ("the Commissioners"). The investors seek to recover the amount of their lost investments from the Commissioners personally. The trial court granted a summary judgment in favor of the Commissioners, basing its ruling on several alternative grounds. The court held that the doctrine of res judicata barred the action, that the Commissioners are immune from suit under the Utah Governmental Immunity Act, and that the applicable statute of limitations bars this action. The investors challenge all of these legal conclusions. We agree with the investors that the trial court's ruling was incorrect and reverse and remand the matter for further proceedings.

In *Madsen v. Borthick*, 658 P.2d 627 (Utah 1983) [hereinafter *Madsen I*], the plaintiffs in the instant case sued the State, its Department of Financial Institutions, and its Commissioner of Financial Institutions, Mirvin D. Borthick, in his official capacity, claiming that they had lost most of their investment in Grove Finance when it became insolvent and that its insolvency was due to the defendants' failure to perform their statutory duties.[1] 658 P.2d at 627–28. The trial court dismissed that case for "failure to state a claim upon which relief could be granted" because the investors, in suing the State and state officers in their official capacities, had failed to file the statutorily required notice of claim within the allotted time. *Id.* at 628; *see* Utah Code Ann. §§ 63–30–11, –12 (Supp. 1979). This Court upheld that dismissal. 658 P.2d at 633.

In our opinion in *Madsen I*, we indicated that one reason for affirming the trial court's dismissal was the investors' failure to sue Commissioner Borthick in his individual capacity. *See id.* at 632–33. Absent an allegation that he had "acted or failed to act through gross negligence, fraud or mal-

---

1. For a more detailed account of the factual background of this case, see *Madsen v. Borthick,* 658 P.2d 627, 628–29 (Utah 1983) [hereinafter *Madsen I*].

ice," the suit against him was in his official capacity only. *See id.* (quoting Utah Code Ann. § 63–30–4 (Supp.1979)). Because the investors had not made such an allegation, we were not called upon in *Madsen I* to decide whether the Act's notice requirement would bar a suit against the Commissioner in his individual capacity. 658 P.2d at 630 n. 5.

Following our decision in *Madsen I*, the investors, in an apparent attempt to avoid the notice requirement and its then-expired time limit, brought the present action against former commissioners Mirvin D. Borthick and W. Smoot Brimhall in their individual capacities, claiming that their failure to perform their statutory duties constituted gross negligence for which they are personally liable. *See* Utah Code Ann. § 63–30–4 (Supp.1979). The Commissioners moved for summary judgment. The trial court granted their motion on three grounds: first, that the doctrines of claim preclusion and issue preclusion barred the suit because a dismissal of the same action was affirmed in *Madsen I;* second, that the Commissioners were immune from suit under the Utah Governmental Immunity Act ("the Act"), Utah Code Ann. §§ 63–30–1 to –38 (1978 & Supp. 1983); and third, that any applicable statute of limitations had run. *See* Utah Code Ann. §§ 78–12–26(4), –28(1), –29(2) (1987). The investors have appealed.

We note at the outset that a challenge to a summary judgment presents for review conclusions of law only because, by definition, summary judgments do not resolve factual disputes. *See* Utah R.Civ.P. 56(c). We accord no deference to a trial court's legal conclusions given to support the grant of a summary judgment, but review them for correctness. *See, e.g., Atlas Corp. v. Clovis Nat'l Bank,* 737 P.2d 225, 229 (Utah 1987).

The investors first claim that the trial court erred in granting summary judgment on grounds of res judicata. The doctrine of res judicata comprehends two different sets of legal rules that should be analyzed separately. These two sets of rules are known as the claim preclusion and issue preclusion branches of the doctrine. *Noble v. Noble,* 761 P.2d 1369, 1374 n. 5 (Utah 1988). We will consider the propriety of the trial court's ruling first under the law of claim preclusion and then under the law of issue preclusion.

■ Claim preclusion bars a cause of action only if the suit in which that cause of action is being asserted and the prior suit satisfy three requirements. First, both cases must involve the same parties or their privies. Second, the claim that is alleged to be barred must have been presented in the first suit or must be one that could and should have been raised in the first action. Third, the first suit must have resulted in a final judgment on the merits. *See Penrod v. Nu Creation Creme, Inc.,* 669 P.2d 873, 875 (Utah 1983) (citing *Church v. Meadow Springs Ranch Corp.,* 659 P.2d 1045, 1048 (Utah 1983); *Bradshaw v. Kershaw,* 627 P.2d 528, 531 (Utah 1981); *International Resources v. Dunfield,* 599 P.2d 515, 516–17 (Utah 1979); *Krofcheck v. Downey State Bank,* 580 P.2d 243, 244 (Utah 1978); *Belliston v. Texaco, Inc.,* 521 P.2d 379, 380 (Utah 1974); *National Fin. Co. v. Daley,* 14 Utah 2d 263, 265–66, 382 P.2d 405, 407 (1963); *Wheadon v. Pearson,* 14 Utah 2d 45, 47, 376 P.2d 946, 947–48 (1962)).

■ The investors do not dispute that the first two requirements for claim preclusion are met. Therefore, the only question remaining is whether the finality requirement is satisfied. The investors argue that the order of dismissal in *Madsen I* was not a final judgment because it did not go to the merits of the suit; rather, it was based on the investors' failure to satisfy a precondition to suit, namely, the filing of a statutorily required notice of claim. The Commissioners, however, contend that the dismissal in *Madsen I* should be considered a judgment on the merits because Utah Rule of Civil Procedure 41(b) classifies "any dismissal not provided for in this rule" as "an adjudication upon the merits." [2] Utah

---

**2.** Utah Rule of Civil Procedure 41(b) provides as follows:

R.Civ.P. 41(b). This definition, the Commissioners argue, by its plain terms governs all dismissals, not just those granted under rule 41(b). They observe that in *Madsen I,* we acknowledged that the trial court stated that it dismissed the action for "failure to state a claim upon which relief could be granted," 658 P.2d at 628, and they contend that such dismissals fall within rule 41(b)'s catchall category because they are not provided for in the rule. The Commissioners then defend the trial court's characterization of the dismissal in *Madsen I* as a dismissal for failure to state a claim by asserting that it was based both on the investors' failure to meet the notice requirement and on their failure to state a claim under the Governmental Immunity Act.

 It is true that the trial court's order in *Madsen I* made it appear that the court based its dismissal both on failure to comply with the notice requirement and on failure to state a legally cognizable claim. The question for us is whether, having found that the plaintiffs in *Madsen I* had failed to satisfy the notice requirement, the trial court in that case could then legitimately pass on the merits of the complaint. We conclude that it could not.[3] Therefore, we find that the dismissal in *Madsen I* was not truly on the merits and cannot satisfy the third requirement for claim preclusion. This conclusion rests on our determination of two issues. First, we find that a dismissal for "lack of jurisdiction" under rule 41(b) includes a dismissal for failure to meet a precondition to suit. Second, we conclude that failure to meet the notice requirement of the Act consti-

tutes failure to fulfill a precondition to suit. Each of these determinations must be more fully explained.

Although the last sentence of rule 41(b) may generally escape notice, in fact it does appear, as the Commissioners argue, to comprehensively define a dismissal on the merits; not just rule 41(b) dismissals, but all dismissals. It states:

> Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision *and any dismissal not provided for in this rule,* other than a dismissal for lack of jurisdiction or for improper venue or for lack of an indispensable party, *operates as an adjudication upon the merits.*

Utah R.Civ.P. 41(b) (emphasis added). The trial court in *Madsen I* did not specify that the dismissal was not on the merits. Therefore, under rule 41(b), unless it was a dismissal for "lack of jurisdiction or for improper venue or for lack of an indispensable party," it was a dismissal on the merits. Plainly, the dismissal was not for improper venue or for failure to join an indispensable party. Therefore, it can escape classification as a judgment on the merits only if it was based on "lack of jurisdiction." What does the phrase "lack of jurisdiction" in rule 41(b) mean?

At common law, a judgment based on "the plaintiff's failure to satisfy a precondition to suit" does not bar another action by the same plaintiff on the same claims. Restatement (Second) of Judgments § 20(2) (1982); *accord, e.g., Costello v. United States,* 365 U.S. 265, 285–86, 81 S.Ct. 534, 544–45, 5 L.Ed.2d 551 (1961). Rule 41(b)

---

For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against

the plaintiff, the court shall make findings as provided in Rule 52(a). *Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for improper venue or for lack of an indispensable party, operates as an adjudication upon the merits.* Utah R.Civ.P. 41(b) (emphasis added).

3. Our opinion in *Madsen I* does not conflict with this conclusion to the extent that it treats the merits of issues on which the very applicability of the notice requirement depended.

includes no such explicit provision, although its other exceptions do parallel the common law. *Compare* Utah R.Civ.P. 41(b) *with* Restatement (Second) of Judgments § 20 (1982). However, the United States Supreme Court has read this common law rule into Federal Rule of Civil Procedure 41(b) by holding that the failure to satisfy a precondition to suit is an "initial bar" that results in a "lack of jurisdiction" under federal rule 41(b). *Costello,* 365 U.S. at 284–88, 81 S.Ct. at 544–46. This position has been acknowledged and accepted as correct by the federal rules committee that drafted rule 41(b) and continues to be the federal rule today. *See* Fed.R.Civ.P. 41(b) advisory committee's note on 1963 amendment; Restatement (Second) of Judgments § 20 reporter's note, at 179–80 (1982).

We find the Supreme Court's reasoning persuasive and adopt the *Costello* interpretation of the term "lack of jurisdiction" in our rule 41(b).[4] The Supreme Court reasoned that the policies underlying both federal rule 41(b) and the doctrine of res judicata favor adherence to the common law rule, namely, that "dismissals in which the merits could not be reached for failure of

the plaintiff to satisfy a precondition" do not ordinarily bar subsequent suits. *Costello,* 365 U.S. at 285–86, 81 S.Ct. at 544–45. We can conceive of no legitimate purpose for a contrary rule.

We next explain our earlier-stated conclusion that the investors, by failing to file notice of their claim in *Madsen I,* failed to satisfy a precondition to suit. Section 63–30–11 sets out the notice requirement, and section 63–30–12 spells out the effect of failing to comply with the requirement. Utah Code Ann. §§ 63–30–11, –12 (Supp. 1979).[5] Section 63–30–11 provides that before a plaintiff may maintain an action against the State, he or she must file a notice of claim with the appropriate state entity. Utah Code Ann. § 63–30–11 (Supp. 1979). Section 63–30–12 provides that an action against the State is barred if the required notice is not filed. Utah Code Ann. § 63–30–12 (Supp.1979). It therefore makes failure to give notice grounds for dismissal. A plain reading of those sections indicates that no suit against the State may be maintained if notice is not given. We therefore conclude that service of notice is a precondition to suit.[6]

**4.** This portion of the Utah rule is identical in all material respects to federal rule 41(b). There is no reason to believe that the drafters of the Utah rule had any intention to depart from the substantive judgments made by the federal rule's drafters. *See* Utah R.Civ.P. 41(b) compiler's note. Therefore, we look freely to federal cases decided under this rule in determining its scope and meaning. *See Wilson v. Lambert,* 613 P.2d 765, 767 n. 2 (Utah 1980); *Winegar v. Slim Olson, Inc.,* 122 Utah 487, 491, 252 P.2d 205, 207 (1953); *cf. Pate v. Marathon Steel Co.,* 692 P.2d 765, 767 n. 1 (Utah 1984) (relying on authorities interpreting Federal Rule of Civil Procedure 54(b)).

**5.** At the time of the trial court's decision in *Madsen I,* sections 63–30–11 and –12 provided in part as follows:

Any person having a claim for injury to person or property against a governmental entity or its employee shall, before maintaining an action under this act, file a written notice of claim with such entity for appropriate relief including money damages. The notice of claim shall set forth a brief statement of the facts and the nature of the claim asserted, shall be signed by the person making the claim or such person's agent, attorney, parent

or legal guardian, and shall be directed and delivered to the responsible governmental entity within the time prescribed in section 63–30–12 or 63–30–13, as applicable.

Service of the notice of claim upon an employee of a governmental entity is not a condition precedent to the commencement of an action or special proceeding against such person. If an action or special proceeding is commenced against the employee, but not against the governmental entity, service of the notice of claim upon the governmental entity is required only if the entity has a statutory duty to indemnify such person.

Utah Code Ann. § 63–30–11 (Supp.1979).

A claim against the state is barred unless notice of claim is filed with the attorney general and the agency concerned within one year after the cause of action arises.

Utah Code Ann. § 63–30–12 (Supp.1979).

**6.** The language of section 63–30–11 also carries the negative implication that service of notice on the defendant entity is a precondition to suit against the entity by stating specifically that service of notice on an employee "is not a condition precedent to the commencement of an action ... against such person." Utah Code Ann. § 63–30–11 (Supp.1979).

This reading of sections 63–30–11 and –12 as imposing a precondition to suit is supported by our decision in *Foil v. Ballinger*, 601 P.2d 144 (Utah 1979). In *Foil*, we held that a similar statutory notice of claim requirement was a precondition to the bringing of a medical malpractice action. 601 P.2d at 150. Like section 63–30–11, the statute at issue in *Foil* provided that notice was required before a suit could be brought. *See id.* at 150. However, it did not expressly state that an action brought in the absence of prior notice was barred. *See id.* Nevertheless, we concluded that logically failure to give the required notice was grounds for dismissal. *See id.* For those reasons, we found the notice requirement to be a precondition. *Id.*

Because the plaintiffs in *Madsen I* did not give the required notice and therefore failed to satisfy a precondition to suit, the trial court lacked jurisdiction to consider the merits of their claim. *See Costello*, 365 U.S. at 286, 81 S.Ct. at 545; *Durham v. Mason and Dixon Lines, Inc.*, 404 F.2d 864, 865 (6th Cir.1968). Thus, claim preclusion does not bar the investors' present action.

■ The second major issue to be considered in reviewing the trial court's res judicata ruling is whether the grant of summary judgment was proper under what has sometimes been referred to as collateral estoppel but is more accurately described as the issue preclusion branch of the doctrine of res judicata. *See Noble v. Noble*, 761 P.2d at 1374 n. 5. Under the rules of issue preclusion, the adjudication of an issue bars its relitigation in another action only if four requirements are met. First, the issue in both cases must be identical. Second, the judgment must be final with respect to that issue. Third, the issue must have been fully, fairly, and competently litigated in the first action. Fourth, the party who is precluded from litigating the issue must be either a party to the first action or a privy of a party. *See, e.g., Noble*, 761 P.2d at 1374; *Wilde v. Mid-Century Ins. Co.*, 635 P.2d 417, 419 (Utah 1981); *Searle Bros. v. Searle*, 588 P.2d 689, 691 (Utah 1978).

■ We begin with the requirement that the issues in both cases be identical. As explained previously, the only issues decided in *Madsen I* were whether a notice of claim was required in that case and whether the investors had, in fact, served the State with a notice of claim. Notice was required in *Madsen I*, a suit against the State and Commissioner Borthick in his official capacity. 658 P.2d at 630–33. Yet no notice of claim was ever filed with the State in either that case or the present case, and the time for doing so has run, apparently in both cases.[7] *See id.* at 628 (citing Utah Code Ann. §§ 63–30–11, –12 (Supp.1979)). The Commissioners argue that this lack of notice in both cases satisfies the first element of issue preclusion, identity of issues. This is true only if the investors were required to notify the State of the present case. Therefore, the first question for us is whether filing a notice of claim with the State was required in the instant case.

The Commissioners point out that when the cause of action arose in 1980,[8] section 63–30–11 of the Code provided that notice of a claim against an employee had to be filed with the State if the State had a duty to indemnify the employee. *See* Utah Code Ann. § 63–30–11 (Supp.1979). They note that the Code sections governing the State's duty to indemnify employees required that the State not only pay any judgments rendered against the employees for actions arising from their employment in which the employees were not found to have acted in a grossly negligent, fraudulent, or malicious fashion, but that it also

---

7. It is interesting that this conclusion is necessarily based on the assumption that the one-year period specified for suits against the State also applies to suits against employees. In 1980, no statute specified the time for filing notice of a claim against an employee. The lack of any such provision may be one indication that the State need not have been notified of suits against employees.

8. For the purposes of this appeal, the parties have conceded and we will assume that the cause of action arose on June 18, 1980, the date of Grove Finance's closure by the State.

defend the employees against *all* suits arising from their employment, including those in which allegations of employee gross negligence, fraud, or malice had been made. *See* Utah Code Ann. §§ 63–48–2 to –4 (1978).[9] Based on these provisions, the Commissioners argue that the term "indemnify" should be read to include both the State's duty to pay judgments and its duty to defend employees even when it would not be liable for any resulting judgment. By this expansive construction of the term "indemnify," the Commissioners attempt to impose on all plaintiffs in all suits against employees the requirement of section 63–30–11 that a notice of claim

must be served on the State as a precondition to suit. The Commissioners thus contend that as of 1980, the law required the investors to file a notice of claim in any suit brought under the Act and the investors' present action is barred because they failed to file the notice.

The Commissioners' argument runs directly counter to section 63–30–11's apparently plain statement to the opposite effect: "[S]ervice of the notice of claim upon the governmental entity is required *only if* the entity has a statutory duty to indemnify such person." [10] Utah Code Ann. § 63–30–11 (Supp.1979) (emphasis added). To avoid this fact, the Commissioners claim

9. In 1980, the relevant portions of sections 63–48–2 through –4 provided as follows:

 (2) "Public entity" means the state

 ....

 (3) "Claim" means any alleged personal legal liability arising out of any act or omission by any officer or employee during the performance of his duties, within the scope of his employment, or under color of authority.
Utah Code Ann. § 63–48–2(2), (3) (1978).

 (1) If any officer or employee desires the public entity to defend him against any claim, the officer or employee shall request the public entity in writing to so defend him not later than ten days after service of process upon him in respect to the claim. If the officer or employee fails to make such request of the public entity, or if the officer or employee fails to reasonably co-operate in the defense of the claim, then the public entity is not obligated to defend the officer or employee against the claim or continue this defense in case of such failure to co-operate, nor pay any judgment, compromise, or settlement in respect to the claim.

 (2) If the public entity conducts the defense of the officer or employee against the claim, then the public entity shall pay any judgment based upon or any compromise or settlement of the claim except as provided in subsections (3) or (4) of this section.

 (3) In connection with the defense of the officer or employee against a claim, the public entity may conduct the defense under an agreement with that officer or employee to the effect that the public entity reserves the right not to pay the judgment, compromise, or settlement until it is established that the claim arose out of an act or omission occurring during the performance of his duties, within the scope of his employment, or under color of authority.

 (4) No public entity is obligated to pay any judgment based upon a claim against an officer or employee if it is established that the

officer or employee acted or failed to act due to gross negligence, fraud, or malice.
Utah Code Ann. § 63–48–3(1)–(4) (1978).

 (1) Subject to subsection (2) of this section, if an officer or employee pays any judgment entered against him, or any portion of it, which the public entity is required to pay under section 63–48–3, the officer or employee is entitled to recover the amount of such payment and the costs of his defense from the public entity.

 (2) If the public entity does not conduct the defense of an officer or employee against a claim or does conduct this defense under an agreement as provided in subsection 3 of section 63–48–3, the officer or employee may recover from the public entity under subsection (1) of this section only if:

 (a) He establishes that the act or omission upon which the judgment is based occurred during the performance of his duties, within the scope of his employment, or under color of authority and that he conducted the defense of the claim against him in good faith; and

 (b) The public entity fails to establish that the officer or employee acted or failed to act due to gross negligence, fraud, or malice.
Utah Code Ann. § 63–48–4 (1978).

10. In 1980, the second paragraph of section 63–30–11 provided:

 Service of the notice of claim upon an employee of a governmental entity is not a condition precedent to the commencement of an action or special proceeding against such person. *If an action or special proceeding is commenced against the employee, but not against the governmental entity, service of the notice of claim upon the governmental entity is required only if the entity has a statutory duty to indemnify such person.*
Utah Code Ann. § 63–30–11 (Supp.1979) (emphasis added). The 1983 amendment deleted this portion of section 63–30–11. *See id.* (Supp. 1983).

that this language should be ignored, that we should look instead to the 1983 amendment of section 63–30–11, which deleted this language and had the effect of expressly requiring service of a notice of claim on the State in all suits against employees, whether or not any judgment might ultimately be payable by the State. They argue that the 1983 amendment was intended to clarify the earlier statute and to bring it into conformance with the legislature's true intention in enacting the earlier version of the statute.

██ The Commissioners are correct in concluding that the effect of the 1983 deletion of this language was to leave only the first paragraph of the section, which requires that a notice of claim be filed with the State in all suits brought against state employees for actions taken in the course of their employment. We also agree that if the State has a statutory duty to defend employees in all such suits and if the State's duty to indemnify is defined as encompassing its duty to defend employees, the statutory provisions relating to the notice requirement and to indemnification are more coherent since the 1983 amendment was made. However, we need not consider whether the legislature can properly characterize the duty to defend as a duty to indemnify, for we find no suggestion in sections 63–48–2 through –4 that it intended to do so. Those provisions clearly state that there is no duty to indemnify by paying a judgment awarded in an action for gross negligence, fraud, or malice—in other words, an action brought against an employee in an individual capacity. Moreover, the only possible import of the final sentence of the second paragraph of section 63–30–11 is that there must be some suits brought under the Act against employees of which the State need not be notified. Unless we are to ignore that sentence entirely, the 1980 version of section 63–30–11 is more plainly read to expressly except from the notice of claim requirement suits against employees in their individual capacities. If this were not enough to undermine the Commissioners' position, we find no indication in the 1983 amendment or elsewhere that the amendment was intended to clarify a preexisting intention.[11] For these reasons, we conclude that in 1980, section 63–30–11 did not require one suing state employees in their individual capacities to file a notice of claim with the State. Therefore, the issue preclusion branch of the doctrine of res judicata cannot support the summary judgment.

██ Having rejected res judicata as a basis for the summary judgment, we next consider the correctness of the trial court's ruling that the Commissioners are immune from suit under the Governmental Immunity Act. The investors point out that the Act, as it read at the time the cause of action arose in 1980, granted the Commissioners no immunity from personal liability for gross negligence committed in their individual capacities.[12] The Commission-

---

**11.** The Commissioners have made no persuasive argument for disregarding the presumption that an amendment is intended to change existing legal rights. *See* 1A N. Singer, *Sutherland on Statutory Construction* § 22.30 (Sands 4th rev. ed. 1985). Furthermore, in asking us to rule that an entire sentence of the statute had absolutely no meaning at all, they have ignored our fundamental duty to give effect, if possible, to every word of the statute. *See Totorica v. Thomas,* 16 Utah 2d 175, 178, 397 P.2d 984, 987 (1965); *Stevenson v. Salt Lake City,* 7 Utah 2d 28, 31, 317 P.2d 597, 599 (1957); 2A N. Singer, *Sutherland on Statutory Construction* § 46.06 (Sands 4th rev. ed. 1984).

**12.** At the time this cause of action arose, section 63–30–4 of the Code provided in part as follows:

The remedy against a governmental entity or its employee for an injury caused by an act or omission which occurs during the performance of such employee's duties, within the scope of employment, or under color of authority is, after the effective date of this act, exclusive of any other civil action or proceeding by reason of the same subject matter against the employee or the estate of the employee whose act or omission gave rise to the claim, *unless the employee acted or failed to act through gross negligence,* fraud, or malice.

An employee may be joined in an action against a governmental entity in a representative capacity if the act or omission complained of is one for which the governmental entity may be liable, but no employee shall be held personally liable for acts or omissions occurring during the performance of the employee's duties, within the scope of employment or under color of authority, *unless it is*

ers, however, argue that the 1983 amendment to the Act, which granted them immunity for gross negligence, should be applied to the facts of this case, even though this cause of action arose three years earlier. The trial court apparently accepted this argument.

It is a long-standing rule of statutory construction that a legislative enactment which alters the substantive law or affects vested rights will not be read to operate retrospectively unless the legislature has clearly expressed that intention. *See, e.g., Schultz v. Conger*, 755 P.2d 165, 166 (Utah 1988); *Stephens v. Henderson*, 741 P.2d 952, 953–54 (Utah 1987); *Pilcher v. State*, 663 P.2d 450, 455 (Utah 1983); *Department of Social Servs. v. Higgs*, 656 P.2d 998, 1000 (Utah 1982); *Union Pac. R.R. v. Trustees, Inc.*, 8 Utah 2d 101, 104, 329 P.2d 398, 399 (1958); *McCarrey v. State Teachers' Retirement Bd.*, 111 Utah 251, 253, 177 P.2d 725, 726 (1947); *In re Ingraham's Estate*, 106 Utah 337, 339, 148 P.2d 340, 341–42 (1944); *Farrel v. Pingree*, 5 Utah 443, 448, 16 P. 843, 845 (1888). That rule of construction has been codified in section 68–3–3 of the Code. *See Stephens*, 741 P.2d at 953–54; Utah Code Ann. § 68–3–3 (1986). The Commissioners cannot claim that the 1983 amendment contains the necessary expression of legislative intent for retrospective application.

The commissioners do claim, however, that the amendment should be applied retroactively because it changes procedural rather than substantive rights. This Court does recognize such an exception to the general rule against retrospective applica-

tion. *See, e.g., Pilcher v. State*, 663 P.2d at 455; *Foil v. Ballinger*, 601 P.2d at 151. But we do not agree that the amendment was procedural.

The amendment at issue deleted the provision making employees personally liable for gross negligence which had been contained in section 63–30–4 of the Code. *Compare* Utah Code Ann. § 63–30–4 (Supp.1979) *with id.* (Supp.1983). Deletion of that provision operated to eliminate the Commissioners' liability as individuals, and it was already too late to file the notice required to sue the State. *See Madsen I*, 658 P.2d at 628, 630, 632. Thus, retroactive application of the 1983 version of the statute would deprive the investors of any grounds for recovery. Such elimination of an accrued cause of action is clearly a change in the substantive law which affects vested rights. Therefore, we conclude that the 1983 amendment should be applied prospectively only and that it cannot support the trial court's finding of immunity.

■ Finally, we consider the investors' challenge to the last ground given by the trial court in support of the summary judgment—that the suit was time-barred by any of three potentially applicable statutes of limitation, sections 78–12–26(4), –28(1), and –29(2) of the Code.[13] Utah Code Ann. §§ 78–12–26(4), –28(1) (1987); *id.* § 78–12–29(2) (Supp.1988). The investors argue that no matter which of these provisions applies, section 78–12–40 of the

---

established that the employee acted or failed to act due to gross negligence, fraud or malice. Utah Code Ann. § 63–30–4 (Supp.1979) (emphasis added). The 1983 amendment deleted the exception for gross negligence. *See id.* (Supp. 1983).

13. The three statutes of limitations cited by the parties provide as follows:
 Within three years:

 . . . .

 [A]n action for a liability created by the statutes of this state, other than for a penalty or forfeiture under the laws of this state, except where in special cases a different limitation is prescribed by the statutes of this state.

Utah Code Ann. § 78–12–26(4) (1987).
 Within two years, an action: . . . [A]gainst a marshall, sheriff, constable, or other officer upon a liability incurred by the doing of an act in his official capacity, and in virtue of his office, or by the omission of an official duty. . . .
Utah Code Ann. § 78–12–28(1) (1987).
 Within one year:

 . . . .

 An action upon a statute for a penalty or forfeiture where the action is given to an individual. . . .
Utah Code Ann. § 78–12–29(2) (Supp.1988).

Code[14] operated to extend the time for filing the complaint one year beyond the date of this Court's opinion affirming dismissal of the first action. Section 78–12–40 provides that a plaintiff whose action fails on grounds other than its merits may have one year from the date of the failure to file a new action so long as the first action was "commenced within due time." Utah Code Ann. § 78–12–40 (1987).

The Commissioners make several arguments in response, the most prominent of which is that section 78–12–40 does not apply to this case because the investors failed to file the required notice of claim in the first suit and such a filing was necessary for them to "commence" the prior suit "within due time," as section 78–12–40 requires. The Commissioners' argument is without merit. In Utah, suits are commenced by the filing of a complaint or the service of a summons, not by the filing of a notice of claim, which is more properly classified as a precondition to suit than as the means of commencing a suit. *See Foil v. Ballinger,* 601 P.2d at 149–50; Utah R.Civ.P. 3(a).

The next question is whether section 78–12–40 actually extended the time for bringing this action. In making that determination, we need not decide which of the three statutes of limitation actually applies to this case because we conclude that under any of them, section 78–12–40 did extend the time for filing and that the investors commenced their action within the period of the extension. One purpose of section 78–12–40 is to assure that claimants are not deprived of potentially valid suits by appeals that are not resolved until after the applicable periods of limitation run. In accordance with that purpose, we have held that if dismissal of a first action is appealed, section 78–12–40's extension of time for filing a second action runs from the date of the dismissal's affirmance. *See Guthiel v. Gilmer,* 27 Utah 496, 508, 76 P. 628, 632

(1904) (decided under section 2893, Revised Statutes 1898, a predecessor to section 78–12–40).

For the purposes of this appeal, the investors concede that their cause of action accrued on June 18, 1980, the date of Grove Finance Company's closure by the State. The shortest period of limitations that could apply is the one-year period provided by section 78–12–29(2). The first action, *Madsen I,* was commenced by the filing of a complaint before it was dismissed on May 14, 1981, well within one year of the date on which the limitation period began to run. This Court affirmed that dismissal on January 28, 1983. The investors filed the second action on June 20, 1983. Thus, the investors filed the second action within the one-year period of the extension and it was not time-barred.

We have considered all of the Commissioners' other arguments in support of the summary judgment and find them to be without merit. The judgment is reversed, and the case is remanded to the trial court.

HALL, C.J., HOWE, Associate C.J., and STEWART and DURHAM, JJ., concur.

---

**14.** Section 78–12–40 provides as follows:
 If any action is commenced within due time and a judgment thereon for the plaintiff is reversed, or if the plaintiff fails in such action or upon a cause of action otherwise than upon the merits, and the time limited either .

by law or contract for commencing the same shall have expired, the plaintiff, or if he dies and the cause of action survives, his representatives, may commence a new action within one year after the reversal or failure.
Utah Code Ann. § 78–12–40 (1987).