2004 UT 21

**Teresa McBRIDE–WILLIAMS and Timothy Lee McBride, Plaintiffs and Appellees,**

v.

**G. Stedman HUARD, M.D., IHC Health Services, Inc., dba Dixie Regional Medical Center, and John Does 1 through 10, Defendants and Appellants.**

No. 20020751.

Supreme Court of Utah.

March 2, 2004.

Rehearing Denied May 5, 2004.

Matthew T. Graff, Randall C. Allen, Cedar City, for plaintiffs.

David H. Epperson, Stephen Owens, Salt Lake City, for G. Stedman Huard, M.D.

Brinton R. Burbidge, Paul D. VanKomen, Salt Lake City, for IHC Health Services, Inc., dba Dixie Regional Medical Center.

NEHRING, Justice:

¶ 1 This appeal presents us with the question of whether a medical malpractice claim

made by a party who files a complaint which is dismissed for failure to perform certain administrative procedures, commonly known as "prelitigation" procedures, is eligible for the one-year extension of the statute of limitations under the general savings statute of Utah Code section 78–12–40 (2003). We conclude, as did the trial court, that it is.

## FACTS AND PROCEDURAL HISTORY

¶ 2 On October 15, 1998, Mr. Kaarman Elmo McBride died of complications after an abdominal aortic aneurysm. At the time of his death, Mr. McBride was being treated by Dr. G. Stedman Huard at the Dixie Regional Medical Center in St. George, Utah.

¶ 3 Mr. McBride's children, Teresa McBride–Williams and Timothy Lee McBride, whom for convenience we will call "the McBrides," filed a complaint alleging that the negligence of Dr. Huard and the hospital caused Mr. McBride's death. Because both Dr. Huard and the hospital are health care providers, the McBrides' claims were subject to the Utah Health Care Malpractice Act. Utah Code Ann. §§ 78–14–1 to –17 (2000). The McBrides filed their complaint on September 15, 2000, within the Malpractice Act's two-year statute of limitations. *Id.* § 78–14–4(1). Dr. Huard and the hospital moved to dismiss the complaint because the McBrides had failed to comply with the litigation procedures set out in the Malpractice Act. *Id.* § 78–14–12. The trial court granted the motion.

¶ 4 On May 9, 2001, approximately two years and seven months after Mr. McBride's death, the McBrides filed a notice to commence an action, the first among the prelitigation procedures mandated by the Malpractice Act. *Id.* § 78–14–2(2)(b). On December 12, 2001, the Division of Occupational and Professional Licensing, the agency responsible for overseeing the prelitigation procedures under the Malpractice Act, issued the McBrides a certificate of compliance with the procedures as required by section 78–14–12(3)(c)(ii). The McBrides then filed a second complaint on January 11, 2002. Dr. Huard and the hospital moved for summary judgment. They based their motion on the contention presented to us here: that the two-year statute of limitations barred the McBrides' claims because their first complaint did not "commence" an action and, therefore, the McBrides' claims became time-barred as of October 15, 2000.

¶ 5 Determining that the McBrides' first complaint "commenced" an action for the purpose of invoking the one-year savings provision of section 78–12–40, the trial court denied the defendants' motion. We then granted the defendants' petition for interlocutory appeal.

## STANDARD OF REVIEW

¶ 6 This appeal comes to us from a denial of a motion for summary judgment in which no facts are in dispute. We review without deference the trial court's ruling on the legal issue presented. *Davis County Solid Waste Mgmt. v. City of Bountiful*, 2002 UT 60, ¶ 9, 52 P.3d 1174.

## ANALYSIS

¶ 7 Our analytical task requires that we interpret the word "commence" as used in our statutes and our rules of civil procedure. The general savings provision upon which the trial court relied to salvage the McBrides' claims states:

If any action is commenced within due time and a judgment thereon for the plaintiff is reversed, or if the plaintiff fails in such action or upon a cause of action otherwise than upon the merits, and the time limited either by law or contract for commencing the same shall have expired, the plaintiff ... may commence a new action within one year after the reversal or failure.

Utah Code Ann. § 78–12–40 (2000).

¶ 8 The right to file a new action under this section requires both that an action be "commenced" and that it fail for a reason other than its merits. Rule 3(a) of the Utah Rules of Civil Procedure provides clear direction on how an action is commenced, stating that "[a] civil action is commenced (1) by filing a complaint with the court, or (2) by service of a summons together with a copy of the complaint." Had the McBrides' claims

not been subject to the prelitigation procedures of the Malpractice Act, the general savings clause certainly would have preserved their second complaint. The McBrides filed their first complaint, and thus "commenced" their action within the two-year statute of limitations; it was dismissed for reasons unrelated to the merits, and the second complaint was filed within one year. The defendants contend, however, that the Malpractice Act incorporates its own action commencement rules which supplant rule 3(a) and place the general savings clause beyond the McBrides' reach. Addressing the general nature and purpose of its prelitigation procedures, the Malpractice Act states that "[t]he proceedings are informal, nonbinding, and are not subject to [the] Administrative Procedures Act, but are compulsory as a condition precedent to commencing litigation." § 78–14–12(1)(c) (2003).

▮ ¶ 9 The defendants insist that this statutory language precludes the McBrides from resorting to the general savings clause because its language is unambiguous, its requirements mandatory, and its subject matter more specific than the provisions of rule 3(a). According to the defendants, when properly interpreted, section 78–14–12(1)(c) renders the McBrides' first complaint a legal nullity and the subsequent running of the two-year statute of limitations presents an absolute bar to their claims. We disagree.

¶ 10 The requirements set out in rule 3 for the commencement of a civil action act independently from, but in harmony with, various preconditions to suits, including section 78–14–12(1)(c). Rule 3 sets out the manner by which a party may bring a civil matter to the attention of the court. Section 78–14–12(1)(c) does not erect a barrier at the courthouse door, barring entry to medical malpractice claimants who have failed to comply with compulsory prelitigation procedures. Claimants are at liberty to commence an action by filing and serving a complaint under rule 3 irrespective of whether they have heeded the preconditions imposed by the Malpractice Act.

▮ ¶ 11 We adopt this position without endorsing the McBrides' apparent wholesale disregard of the prelitigation procedures mandated by the Malpractice Act. The record indicates that the McBrides were aware of the prelitigation procedures as well as the statute of limitations but chose to proceed *pro se* and ignore the prelitigation requirements. There is merit to the defendants' assertion that the savings statute offers an undeserved safe harbor for their conduct. However, we believe it unwise either to abandon the savings statute in reaction to isolated egregious conduct or to judicially amend the savings statute to include a test of the worthiness of savings statute candidates. The right to commence an action under rule 3 does not, of course, implicate the merits of the claim or even suggest that the court in which the complaint is filed can exercise jurisdiction over it. Rule 3 "commencement" does, however, create the inalterable fact that a claimant has sought the intercession of the court in aid of obtaining a legal remedy. This fact cannot logically be undone and treated as though it never occurred. Yet, it is just this act of conjuring that the defendants insist is demanded by section 78–14–12(1)(c).

¶ 12 We have had previous experience in interpreting the relationship between statutory preconditions and the commencement of suits and have uniformly rejected claims that preconditions to suit should displace the effect of rule 3. *See, e.g., Madsen v. Borthick,* 850 P.2d 442 (Utah 1993) (*Madsen III*); *Madsen v. Borthick,* 769 P.2d 245 (Utah 1988) (*Madsen II*); *Madsen v. Borthick,* 658 P.2d 627 (Utah 1983) (*Madsen I*); *Foil v. Ballinger,* 601 P.2d 144 (Utah 1979). These cases are joined by a common assessment that statutory language creating a "condition precedent" to commencing an action creates a precondition to suit and that a party's failure to satisfy a precondition results in an adjudication for "lack of jurisdiction" pursuant to rule 41(b) of the Utah Rules of Civil Procedure. *See Madsen II,* 769 P.2d at 249–50; *Ballinger,* 601 P.2d at 149–50.

¶ 13 We find unpersuasive the defendants' contention that the language and intent of the Malpractice Act require us to treat differently the precondition language of section 78–14–12(1)(c). The defendants present two arguments in aid of their cause. First, they

insist that the plain language of the statute sets apart the Malpractice Act's preconditional mandate from those we have addressed in the past. In particular, they point to the statutory phrase which makes compliance with prelitigation procedures "compulsory as a condition precedent to commencing litigation" as evidence that the Malpractice Act supplants rule 3. If, as the defendants suggest, "compulsory" is intended to modify "condition precedent," it is redundant. "Condition precedent" is defined as "an act or event, other than a lapse of time, that must exist or occur before a duty to perform something promised arises." *Black's Law Dictionary* 289 (7th ed.1999). The nondiscretionary nature of a condition precedent is subsumed within its definition, and pairing the term with "compulsory" adds nothing. The use of redundant statutory language would be of concern were it not for the fact that the word "compulsory" has a meaningful purpose when read within the context of the entire text of section 78–14–12(1)(c), which states that "[t]he proceedings are informal, nonbinding, and are not subject to [the] Administrative Procedures Act, but are compulsory as a condition precedent to commencing litigation." When properly integrated into the text, the term "compulsory" serves as a descriptive counterweight to the definition of the proceedings as "informal" and "nonbinding" and does not modify "condition precedent."

¶ 14 The defendants next assert that because the Malpractice Act incorporates express provisions that toll its two-year statute of limitations to make accommodation for the time expended in complying with the prelitigation procedures, the legislature intended to preempt the savings statute. The legislature has enacted statutes of limitations specific to a wide variety of statutory and common law causes of action. *See, e.g.,* Utah Code Ann. § 25–6–10 (2003) (statute of limitations on fraudulent transfer claims); *Id.* § 78–15–3 (statute of limitations on products liability claims); *Id.* § 78–12–48 (statute of limitations on asbestos damages claims). In each instance, the limitations period is the product of a policy assessment that includes consideration of the nature of the claim, the durability of evidence, and the impact of claims on insurance coverage, to name but a few. The savings statute similarly codifies a legislative policy judgment. We can find no inherent conflict between statutes of limitations generally and the savings statute. To the extent that they relate to one another, that tie is complementary. Absent a clear expression of legislative intent that a statute of limitations ought to preempt the savings statute, we will not block access to it. The Malpractice Act provides no clear link between its tolling provisions for prelitigation procedures and an intention to supplant the savings statute. We will not discard rule 3 and cut off access to the savings statute based on this tenuous inference of preemption.

¶ 15 The defendants supplement their argument that the Malpractice Act is uniquely crafted to overcome the savings statute with an attack on the precedential value of *Madsen II.* 769 P.2d 245. They point to factual distinctions which they insist disqualify *Madsen II* from consideration. In *Madsen II,* we held that the savings statute preserved the opportunity to prosecute claims against state officials in their individual capacities after those claims had been dismissed in an action brought against the defendants in their official capacities because the plaintiffs had failed to file notices of claim as required by the Utah Governmental Immunity Act. *Id.* at 252–53 (citing Utah Code Ann. 63–30–11, –12 (1979)). While it is true, as the defendants note, that we did not confront the issue of whether the savings clause would have preserved the claims had the second action required Governmental Immunity Act compliance, we stand by our view expressed in *Madsen II* that "[s]ection 78–12–40 provides that a plaintiff whose action fails on grounds other than its merits may have one year from the date of the failure to file a new action so long as the first action was 'commenced within due time.'" *Id.* at 254 (quoting Utah Code Ann. § 78–12–40). It is clear that *Madsen I* and *Madsen II* are premised on the assumption that the Madsen plaintiffs' initial complaint was "commenced within due time," despite containing only claims against the defendants in their official capacities. Had the first complaint not been "commenced within due time," the savings clause

would not have rescued the plaintiffs' subsequent complaint, irrespective of whether the Governmental Immunity Act notice was required.

¶ 16 Finally, the defendants promote as persuasive authority an opinion from the Kansas Supreme Court which refused to extend savings statute relief to claims brought against a municipality outside the statute of limitations. *Gessner v. Phillips County Comm'rs*, 270 Kan. 78, 11 P.3d 1131 (2000). We note, however, that the language creating the statutory preconditions to suit at issue in *Gessner* does not include the term "condition precedent." *Id.* at 1133. It is also noteworthy that the *Gessner* court relied on the legislative history of the relevant statute to guide its interpretation. *Id.* at 1134. We impart no deference to the pronouncements of the Kansas legislature in aid of our interpretation of Utah law. *Gessner* therefore has no bearing in this case.

¶ 17 In conclusion, we affirm the decision of the trial court to allow the McBrides' second complaint to go forward under the savings provision of Utah Code section 78–12–40, holding again that the term "condition precedent" does not supersede the commencement of an action under rule 3 of the Utah Rules of Civil Procedure. The McBrides' error in failing to comply with the proper prelitigation procedures does not prevent them from starting anew under the savings provision.

¶ 18 Associate Chief Justice DURRANT, Justice WILKINS, Justice PARRISH, and Judge ALLPHIN concur in Justice NEHRING's opinion.

¶ 19 Having disqualified herself, Chief Justice DURHAM does not participate herein; District Judge MICHAEL G. ALLPHIN sat.