Vail J. PHILLIPS, Plaintiff
and Appellee,

v.

UTAH STATE CREDIT UNION,
Defendant and Appellant.

No. 890300.

Supreme Court of Utah.

April 23, 1991.

Dale R. Kent, Salt Lake City, for defendant and appellant.

Byron L. Stubbs, Salt Lake City, for plaintiff and appellee.

HALL, Chief Justice:

Defendant Utah State Credit Union ("USCU") appeals an order of the Third Judicial District Court of the State of Utah granting partial summary judgment to plaintiff Vail J. Phillips and directing USCU to release and reassign a note and mortgage held as security, together with all proceeds due or to become due thereon. USCU also appeals the final judgment and order of the district court entered after trial of the same matter.

On November 18, 1980, Phillips borrowed $150,000 from USCU for the purpose of purchasing real property located in Tooele County, Utah. As security for the loan, Phillips gave USCU a note and a trust deed to the property. As additional security for the loan, Phillips assigned to USCU a note and mortgage which he owned as mortgagee with Central Ranches, Inc., fka Deseret Springs, Inc. ("Central Ranches"), as mortgagor.[1] Phillips failed to make payments on the note, and on October 29, 1985, USCU served him with a written declaration of default on the note, which declaration was recorded on November 21, 1985.

In November 1985, Phillips received a check from Guardian Title in the amount of $27,850 made payable jointly to Phillips and USCU pursuant to the terms of the assignment of the Central Ranches note and mortgage. Phillips did not disclose to USCU that he had received this check, but held it without negotiating it for approximately one year.

Pursuant to the notice of default, a trustee's sale was held on April 29, 1986, on the Tooele County property. The property was purchased by USCU at that sale for the sum of $90,000. The balance due on the note at the time of the sale was $112,566.30, leaving $22,566.30 unpaid on Phillips' debt after the sale.

In November of 1986, USCU received a letter from Guardian Title inquiring why the 1985 check received by Phillips had not been negotiated. This was the first notice that USCU had concerning the existence of the 1985 check.

Phillips and USCU met later in November 1986 to discuss the issuance of the 1985 check. USCU suggested that the check be placed in escrow with USCU until it was determined which party had a right to the proceeds from the Central Ranches note and mortgage. Phillips refused to follow this suggestion and apparently tendered the check back to Guardian Title, who issued a new check payable to Phillips and

---

1. This second note and mortgage related to different property than that for which Phillips sought the loan from USCU and shall be hereaf-ter referred to as the "Central Ranches note and mortgage."

USCU in December 1986 as a replacement for the 1985 check. Phillips also received and held this check without informing USCU of its existence.

On January 15, 1987, Phillips filed an action in the district court based upon USCU's failure to bring an action seeking a deficiency judgment upon the note pursuant to Utah Code Ann. § 57–1–32.[2] Phillips' action sought a reassignment of the Central Ranches note and mortgage and a release and reassignment of any proceeds due or to become due under that note and mortgage. In its answer, USCU admitted that it had not filed an action to seek a deficiency judgment against Phillips for the remaining $22,566.30 and admitted that the three-month period allowed under section 57–1–32 had expired. As its defense, USCU responded that it was not required to reassign the Central Ranches note and mortgage notwithstanding the running of the three-month period for bringing a deficiency action.

USCU counterclaimed against Phillips for the remaining $22,566.30 due on the note. USCU claimed that it was not required to reassign the Central Ranches note and mortgage nor to release or return the proceeds from it but was entitled to retain the proceeds from that note and mortgage until the deficiency of $22,566.30 was fully satisfied. Phillips and USCU thereafter brought cross-motions for summary judgment based upon the pleadings filed in the case.

In support of its motion for summary judgment and in response to Phillips' motion, USCU argued that Utah's one action rule, Utah Code Ann. § 78–37–1,[3] precluded

it from seeking a deficiency judgment so long as additional security remained available for satisfaction of the debt. Therefore, USCU argued that it should not be required to bring a deficiency action within three months in violation of that statute and should be allowed to retain the Central Ranches note and mortgage, which had been validly assigned to USCU, to satisfy the remaining debt of $22,566.30.

The trial court rejected these arguments and granted Phillips' motion for partial summary judgment on April 29, 1987. In its order, the trial court required USCU to reassign the Central Ranches note and mortgage, together with all proceeds due or to become due under that note, to Phillips. USCU's motion for summary judgment was also denied at that time. USCU filed a request for interlocutory review of the trial court's decision, which request was denied by this court on August 20, 1987.

On May 12, 1989, a bench trial was held in the district court to determine the issue of damages. During this trial, the facts concerning the issuance of the 1985 and 1986 checks were made known to the trial court. USCU renewed its counterclaim and requested damages for conversion of the 1985 check for $27,850. Final judgment was entered on June 9, 1989, denying USCU's claim for conversion and upholding the partial summary judgment of April 29, 1987, which released the 1985 and 1986 checks to Phillips as proceeds of the Central Ranches note and mortgage, but denying damages to either party. USCU now appeals the summary judgment granted to Phillips on April 29, 1987, and that portion

---

2. Utah Code Ann. § 57–1–32 states in relevant part:

At any time within three months after any sale of property under a trust deed, as hereinabove provided, an action may be commenced to recover the balance due upon the obligation for which the trust deed was given as security, and in such action the complaint shall set forth the entire amount of the indebtedness which was secured by such trust deed, the amount for which such property was sold, and the fair market value thereof at the date of sale.

3. Utah Code Ann. § 78–37–1 states:

There can be one action for the recovery of any debt or the enforcement of any right secured solely by mortgage upon real estate which action must be in accordance with the provisions of this chapter. Judgment shall be given adjudging the amount due, with costs and disbursements, and the sale of mortgaged property, or some part thereof, to satisfy said amount and accruing costs, and directing the sheriff to proceed and sell the same according to the provisions of law relating to sales on execution, and a special execution or order of sale shall be issued for that purpose.

of the June 9, 1989 final judgment denying its claim for conversion and allowing the proceeds of the Central Ranches mortgage to remain the property of Phillips.

Two issues are presented to this court on appeal: First, did the trial court err in requiring defendant to release the assigned Central Ranches note and mortgage, together with the proceeds due and to become due under that mortgage, to plaintiff? Second, did the trial court err in denying defendant's counterclaim for conversion of the 1985 check because the action for conversion was not brought within three months of the nonjudicial sale of the trust deed property?

The trial court granted Phillips' motion for summary judgment based upon its reading of Utah Code Ann. § 57–1–32. Because USCU had not brought a deficiency action against Phillips within three months, the trial court ruled that USCU was no longer entitled to proceed in any way against Phillips or the security interest he had given to USCU. Therefore, the trial court ruled that USCU was not entitled to execute against the interest it held in the assigned note and mortgage and ordered USCU to release that note and mortgage to Phillips.

■ Because disposition of a case by summary judgment denies the parties the benefit of a trial on the merits, we review the facts and inferences in the light most favorable to the party against whom the judgment was granted.[4] Where, as here, summary judgment is granted as a matter of law based upon the pleadings rather than as a matter of fact, we reappraise the trial court's legal conclusions, giving them no particular deference, but review them for correctness.[5]

■ Section 57–1–32 sets forth the procedures and standards for filing a legal action to recover the balance remaining on a debtor's obligation after a nonjudicial sale of property securing the obligation. By implication, the act also prohibits further legal action against the debtor which is not in compliance with its provisions.[6] Therefore, once the three-month period for filing a deficiency action has passed, no further action may be had to seek a deficiency judgment against a debtor.[7]

In both *Cox* and *Concepts, Inc.*, the action contemplated by the creditor and denied by the trial court through operation of section 57–1–32 was further legal action against the debtor. In *Cox*, the creditor sought to bring an action for a deficiency judgment against the debtor after the three-month period for filing such actions had expired. Alternatively, the creditor sought damages for breach of contract against the debtor. In *Concepts, Inc.*, the creditor sought to void a prior trustee's sale of property because of a typographical error in the trustee's notice of sale. The creditor in *Concepts, Inc.* had failed to bring an action within three months of the original trustee's sale and sought to avoid that sale and re-sell the property, thereby giving itself an additional three months to bring a deficiency action against the debtor. The *Cox* and *Concepts, Inc.* decisions prohibited deficiency actions filed against the debtors to proceed and prohibited other forms of legal action to proceed against the debtors because they had been filed more than three months after the trustee's sale of the trust properties.

■ In this case, USCU did not seek a deficiency judgment against Phillips. USCU had not filed suit and had not threatened any further legal proceedings against Phillips. It had taken additional collateral beyond the property sold under Phillips' trust deed. USCU made a conscious decision to collect its remaining debt from this additional collateral, the proceeds of the

---

4. *Concepts, Inc. v. First Security Realty Servs.*, 743 P.2d 1158, 1159 (Utah 1987); *Atlas Corp. v. Clovis Nat'l Bank*, 737 P.2d 225, 229 (Utah 1987).

5. *See Creer v. Valley Bank & Trust Co.*, 770 P.2d 113, 114 (Utah 1989); *Concepts, Inc.*, 743 P.2d at 1159; *Docutel Olivetti Corp. v. Dick Brady Sys., Inc.*, 731 P.2d 475, *passim* (Utah 1986).

6. *See Concepts, Inc.*, 743 P.2d at 1161; *Cox v. Green*, 696 P.2d 1207, 1208 (Utah 1985).

7. *Concepts*, 743 P.2d at 1161; *Cox*, 696 P.2d at 1208.

note and mortgage which had already been assigned by the debtor. USCU contemplated that any further legal action taken to collect the remainder of Phillips' debt would be against a third party, Central Ranches, not against Phillips, the debtor. Therefore, this case differs from *Cox* and *Concepts* because USCU did not seek legal action against Phillips beyond the three-month period required in section 57-1-32.

Had USCU sought a deficiency judgment against Phillips, the trial court would have been correct in dismissing USCU's claim for that judgment. In this case, however, USCU did not seek a deficiency judgment against Phillips, but merely sought to retain its additional security. USCU's retention and use of this additional security was not legal action, but merely a retention of its validly assigned security interest, and was not the type of "action" against Phillips which is prohibited by section 57-1-32.[8] The effect of the trial court's ruling that required USCU to reassign the Central Ranches note and mortgage deprived USCU of the ability to make use of the additional security it had bargained for and received in granting Phillips the initial loan. Therefore, the trial court erred in ordering that USCU was precluded from retaining the Central Ranches note and mortgage and in requiring USCU to release that note and mortgage to Phillips.

■ We therefore hold that where a creditor takes more than one item of security upon an obligation secured by a trust deed, the creditor is not precluded from making use of that additional security merely because the creditor has not sought a deficiency judgment within three months of a nonjudicial sale of one of the items covered by the trust deed property, nor is the creditor required to seek a deficiency judgment under section 57-1-32 in order to maintain its right to the additional security,

so long as the security is applied toward the debt owed on the original loan.

Because USCU did not lose its right to the proceeds of the Central Ranches note and mortgage by not bringing a deficiency action under section 57-1-32, USCU's counterclaim for conversion of the proceeds from the Central Ranches note and mortgage should also be considered. Because Phillips executed upon the $27,850 held by Guardian Title for the 1985 check and collected the 1986, and last, payment under the Central Ranches note, there are no remaining "proceeds" for USCU to collect under that note and mortgage. Therefore, if USCU proved its claim for conversion, it is entitled to judgment against Phillips for the amount remaining on his loan obligation plus any other damages provable by USCU which are the result of the conversion.

At trial, Phillips contended that USCU's conversion claim is one that would be precluded under the three-month limitation in section 57-1-32. The trial court agreed with Phillips' characterization of the statute and held that USCU's claim for conversion was precluded because it was not brought within the three-month limitation period. Phillips' argument mischaracterizes the nature of USCU's conversion claim and the scope of the prohibition on further suits against a debtor in section 57-1-32.

■ USCU's claim for conversion arises from a different factual situation than its right to sell or foreclose the property under the trust deed. Phillips' liability, if any, for conversion is founded upon his acts in holding the 1985 check issued from Guardian Title without informing USCU of its existence or determining with USCU whose property the 1985 check was. Separate acts or obligations of a debtor are still

---

8. Cases in other jurisdictions have held that the retention of additional security for a loan is not a prohibited "action" against the debtor after a nonjudicial sale of the debtor's property. These cases allow a creditor to continue to pursue additional security pledged by the debtor despite anti-deficiency statute prohibitions on further action against the debtor. *In re Forester*, 529 F.2d 310, 316 (9th Cir.1976); *Hull v. Alaska Fed. Sav. & Loan Ass'n of Juneau*, 658 P.2d 122, 125 (Alaska 1983); *Redingler v. Imperial Sav. & Loan Ass'n of the North*, 47 Cal.App.3d 48, 50, 120 Cal.Rptr. 575 (1975); *Freedland v. Greco*, 45 Cal.2d 462, 289 P.2d 463, 465 (1955). These cases are based upon statutes which allow no deficiency judgment against a debtor after a nonjudicial sale.

actionable within normal limitations periods even after the three-month limitation found in section 57–1–32 has run.[9] Therefore, a claim for conversion of the 1985 check from Guardian Title may still be maintained against Phillips although the three-month period has run. If USCU can establish its claim, then it is entitled to such damages as it can prove were caused by Phillips' conversion of the check.

In *Allred v. Hinkley*,[10] this court set forth the standards for a conversion of personal property:

A conversion is an act of wilful interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession. The measure of damages of conversion is the full value of the property. It requires such a serious interference with the owner's right that the person interfering therewith may reasonably be required to buy the goods. Although conversion results only from intentional conduct it does not however require a conscious wrongdoing, but only an intent to exercise dominion or control over the goods inconsistent with the owner's right.[11]

The trial court made the following findings of fact concerning Phillips' conduct in holding the check from Guardian Title. These findings of fact were not contested by Phillips at the trial court level, nor are they contested in Phillips' brief to this court. On October 29, 1985, USCU served Phillips with a notice of default on the trust deed given in exchange for the loan on the Tooele County property. In November 1985, Phillips received a check from Guardian Title Company made out to him and to USCU in the amount of $27,850. This check was issued in conformity with the terms of the assignment of the Central Ranches note and mortgage. Phillips failed to disclose his receipt of the check during the entire default period under the deed of trust and also kept a subsequent check reissued in December 1986 as a replacement for the 1985 check. USCU also contends that Phillips did these acts with knowledge that the proceeds of the Central Ranches note and mortgage were security for the loan given by USCU and that he was in default on that loan. These contentions are supported by the record and by Phillips' allegations in his complaint concerning the additional security.

The acts of Phillips described above, combined with the effect of our decision that the proceeds of the Central Ranches note and mortgage were rightfully the property of USCU, constitute conversion of USCU's check and its right to proceeds from the Central Ranches note and mortgage. Therefore, USCU is entitled to damages for that conversion in the amount of its property converted by Phillips. The case is hereby reversed and remanded to the trial court for a determination of what, if any, damages should appropriately be awarded to USCU for Phillips' conversion of the 1985 proceeds of the Central Ranches note and mortgage and for further proceedings consistent with this opinion.

HOWE, A.C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.

9. See, e.g., Bank of Am. Nat'l Trust & Sav. Ass'n v. Hunter, 8 Cal.2d 592, 67 P.2d 99, 102 (1937) (proviso requiring action for balance due to be brought within three months after sale was intended to prescribe time within which deficiency action must commence and has no application to action based upon independent obligation of guarantor); Willys of Marin Co. v. Pierce, 140 Cal.App.2d 826, 296 P.2d 25, 27 (1956) (unlawful detainer action was not barred by statute); Meyer v. Thomas, 18 Cal.App.2d 299, 63 P.2d 1176, 1178 (1936) (action for conversion of the note rather than for personal judgment on the note allowed); Valley Bank v. Larson, 104 Idaho 772, 663 P.2d 653, 665 (1983) (antideficiency statute inapplicable to independent obligation of guarantor); Nosker v. Trinity Land Co., 107 N.M. 333, 757 P.2d 803, 807 (Ct. App.1988) (lessee's action for conversion of equipment outside subject matter of foreclosure action and thus not barred by res judicata).

10. 8 Utah 2d 73, 328 P.2d 726 (1958).

11. 328 P.2d at 728.