**Roger MUMFORD, Plaintiff and Appellant,**

v.

**ITT COMMERCIAL FINANCE CORP., Defendant and Appellee.**

No. 920069-CA.

Court of Appeals of Utah.

Aug. 16, 1993.

Thomas D. Duffin, Salt Lake City, for plaintiff and appellant.

Robert S. Prince, Blake T. Ostler, Salt Lake City, for defendant and appellee.

Before BENCH, GARFF and JACKSON, JJ.

## OPINION

GARFF, Judge:

Roger Mumford appeals from a summary judgment in favor of ITT Commercial Finance Corporation (ITT). He claims ITT tortiously interfered with his economic relations. We reverse and remand.

When reviewing a summary judgment on appeal, we view the facts and inferences reasonably drawn therefrom in a light most favorable to the losing party, in this case Mumford. *Blue Cross and Blue Shield v. State*, 779 P.2d 634, 636 (Utah 1989); *van der Heyde v. First Colony Life Ins. Co.*, 845 P.2d 275, 276 (Utah App.1993). We recite the facts accordingly.

On May 12, 1988, ITT entered a security agreement with Oasis Boat Sales & Service, Inc. (Oasis), under which ITT agreed to finance the purchase of boats, trailers, and equipment for retail sale. In accordance with this agreement, ITT obtained a security interest in all the inventory and equipment of Oasis. Oasis agreed that, upon sale of the inventory or equipment, it would pay ITT the balance due on the goods sold.

In July 1990, after Oasis defaulted on the agreement, ITT sued Oasis. Thereafter, pursuant to stipulation by the parties, the court entered a preliminary injunction and order granting ITT the right to take control and possession of the collateral.

In order to protect their security interest, ITT, in July 1990, placed representatives at the premises to perform daily inspections of inventory and equipment. Later that month, with the consent of Oasis, ITT restricted access to the property to regular business hours.

At all relevant times to this suit, Oasis employed Mumford as a sales representative. In addition, under the terms and conditions of Mumford's employment, Oasis granted him access to the premises for the purpose of repairing and hauling boats. Mumford acquired access to the premises at all times to repair and haul boats for Oasis and other customers as needed.

On the weekend of August 3, 1990, after finding that ITT had taken control of the premises, Mumford approached the ITT representative and informed him that he had contracts to haul and transport boats and that he needed to have access to the premises to repair his equipment in order to perform the contracts.[1] The representative informed Mumford that ITT had seized the premises and that he would not be allowed on the premises over the weekend. Mumford responded by telling the representative that unless he obtained access to the premises, he would lose the contracts. The representative indicated that he did not care and that he would not allow Mumford to enter the premises. Mumford then suggested that if ITT were concerned about security, the representative could lock the gate after Mumford entered and then, upon completing the repairs, let him out. The representative again refused him access.

Mumford sued ITT, claiming that as a result of its actions, ITT tortiously interfered with the performance of his contracts worth approximately $5000.00. ITT moved for summary judgment, arguing that Mumford had failed to show that it intentionally interfered with the contracts for an improper purpose or by an improper means. Additionally, ITT contended that because its actions were taken to protect a legitimate business interest, it was therefore privileged. The trial court, in a two-page order, granted summary judgment in favor of ITT, and this appeal followed.

On appeal, Mumford argues that there are genuine issues of material fact thereby precluding summary judgment. Specifically, he claims there are genuine issues both as to whether ITT intentionally interfered with his hauling contracts and whether ITT's conduct was privileged.

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c); *Rollins v. Petersen*, 813 P.2d 1156, 1159 (Utah 1991); *Loosli v. Kennecott Copper Corp.*, 849 P.2d 624, 626 (Utah App.), *cert. denied*, 860 P.2d 943 (Utah 1993). "A genuine issue of fact exists where, on the basis of the facts in the record, reasonable minds could differ on whether defendant's conduct measures up to the required standard." *Jackson v. Dabney*, 645 P.2d 613, 615 (Utah 1982). We review for correctness the trial court's conclusions supporting its summary judgment, according no deference to the court's legal conclusions. *Rollins*, 813 P.2d at 1159.

 A claim for intentional interference with prospective economic relations is established "when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself." *Top Serv. Body Shop, Inc. v. Allstate Ins. Co.*, 283 Or. 201, 582 P.2d 1365, 1371 (1978) (en banc). To succeed, a plaintiff must prove

(1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) for an improper purpose or by improper means, (3) causing injury to the plaintiff. Privilege

---

1. Mumford's equipment on the premises included a 1967 Dodge tractor with a forty-foot trailer and a 1974 GMC Astro tractor with a ten-wheel trailer.

is an affirmative defense, which does not become an issue unless "the acts charged would be tortious on the part of an unprivileged defendant."

*Leigh Furniture and Carpet Co. v. Isom,* 657 P.2d 293, 304 (Utah 1982) (quoting *Top Serv.,* 582 P.2d at 1371 (citation omitted)); *accord Sampson v. Richins,* 770 P.2d 998, 1003 (Utah App.), *cert. denied,* 776 P.2d 916 (Utah 1989). "Even a recognized privilege may be overcome when the means used by defendant are not justified by the reason for recognizing the privilege." *Top Serv.,* 582 P.2d at 1371; *see also* William L. Prosser, *Handbook of the Law of Torts,* § 129, at 943 (4th ed. 1971) (discussing factors to be considered in determining whether a defendant's conduct is privileged); *accord* Restatement (Second) of Torts, § 767 cmt. c (1977). Thus, privilege is not an absolute defense.

■ Here, there are material issues of fact regarding whether ITT intentionally interfered with Mumford's hauling contracts by an improper means.[2] The competing affidavits submitted by both Mumford and ITT place this issue directly in dispute. For example, Mumford's affidavit alleges that ITT intentionally interfered with his hauling contracts by refusing him access to his property stored on the Oasis premises. In contrast, ITT claims by way of the affidavit of Samuel K. Yourd, Branch Operations Manager, that neither it nor its representatives were ever aware

that Mumford "was a party to a contract which required him to work on a tractor or trailer during a weekend or risk loosing the contract."[3] In fact, by way of the affidavit of Joseph Klekas, a field representative, ITT claims that Mumford "never attempted to remove any of his personal property from the Oasis Marine property."

■ The tort of interference with economic relations is an intentional tort. However, even if the defendant does not act for the purpose of interfering or does not desire it but knows that the interference is substantially certain to occur as a result of defendant's action and is a necessary consequence thereof, the interference is intentional. Restatement, *supra,* § 766A cmt. e and § 766B cmt. d; *accord Straube v. Larson,* 287 Or. 357, 600 P.2d 371, 374 (1979).

■ The improper means element is satisfied when "the means used to interfere with a party's economic relations are contrary to law, such as violations of statutes, regulations, or recognized common-law rules. Such acts are illegal or tortious in themselves and hence are clearly "improper" means of interference...." *Id.* 657 P.2d at 308.[4]

■ According to the facts alleged in the instant case, the trier of fact may or may not find that ITT's conduct constitutes intentional interference with Mumford's economic relations. If ITT's conduct is found

---

**2.** We address Mumford's claim of intentional interference with economic relations under the "improper means" requirement because Mumford has not demonstrated or claimed that the alleged interference by ITT was maliciously motivated "'in the sense of spite and a desire to do harm ... for its own sake....'" *Leigh Furniture and Carpet Co. v. Isom,* 657 P.2d 293, 307 (Utah 1982 (quoting William L. Prosser, *Handbook of the Law of Torts* § 129 at 943 (4th ed. 1971)). This is consistent with the Utah Supreme Court's pronouncement in *Leigh Furniture* that "[p]roblems inherent in proving motivation or purpose make it prudent for commercial conduct to be regulated for the most part by the improper means alternative, which typically requires only a showing of particular conduct." *Id.*

**3.** Mumford moved to strike Yourd's affidavit on the ground that it was not made on personal knowledge as required by Utah R.Civ.P. 56(e).

The merits of Mumford's motion, which remain unresolved, should be determined on remand.

**4.** Section 767 of the Restatement (Second) of Torts lists the following factors to consider in determining whether the interference is improper:

(a) the nature of the actor's conduct,
(b) the actor's motive,
(c) the interests of the other with which the actor's conduct interferes,
(d) the interests sought to be advanced by the actor,
(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
(f) the proximity or remoteness of the actor's conduct to the interference and
(g) the relations between the parties.

to be intentional, the fact finder could conceivably find that ITT's alleged denial of access to the property amounts to conversion, which in turn would constitute an improper means.[5]

Because there are genuine issues of material fact precluding summary judgment in favor of ITT, we reverse and remand for further proceedings consistent with this opinion.

BENCH and JACKSON, JJ., concur.

---

**5.** In *Allred v. Hinkley*, 8 Utah 2d 73, 328 P.2d 726 (1958), the Utah Supreme Court set forth the following standards for conversion of personal property:

> A conversion is an act of wilful interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession.... Although conversion results only from intentional conduct it does not however require a conscious wrongdoing, but only an intent to exercise dominion or control over the goods inconsistent with the owner's right.

*Id.* 328 P.2d at 728; *accord Phillips v. Utah State Credit Union*, 811 P.2d 174, 179 (Utah 1991). In *Top Serv. Body Shop, Inc. v. Allstate Ins. Co.*, 283 Or. 201, 582 P.2d 1365 (1978), which the Utah Supreme Court adopted in *Leigh Furniture*, the Oregon Supreme Court recognized that "in a claim of improper interference with plaintiff's contractual relations, it is not necessary to prove all the elements of liability for another tort if those elements that pertain to the defendant's conduct are present." *Id.* 582 P.2d at 1371 n. 11 (relying on Restatement (Second) of Torts § 767 cmt. c (1977)).