The ESTATE OF Douglas B. COVINGTON, By and Through its Co–Personal Representatives, Robert H. COVINGTON and Mary C. Whetman, Plaintiffs and Appellees,

v.

John C. and Geraldine C. JOSEPHSON, Defendants and Appellants.

No. 930371–CA.

Court of Appeals of Utah.

Dec. 22, 1994.

Rehearing Denied Jan. 17, 1995.

Gordon A. Madsen, North Salt Lake, for appellants.

David K. Broadbent, Salt Lake City, for appellees.

Before DAVIS, GREENWOOD, and JACKSON, JJ.

GREENWOOD, Judge:

Defendants, John C. Josephson and Geraldine C. Josephson (the Josephsons), appeal the trial court's grant of summary judgment in favor of plaintiff, the Estate of Douglas B. Covington, by and through its co-personal representatives, Robert H. Covington and Mary C. Whetman (the Estate). We affirm.

## BACKGROUND

This appeal arises from a second lawsuit involving a real property transaction. Douglas and Alice Covington sold a tract of real property located in Salt Lake County (the Property) and five shares of water stock to the Josephsons pursuant to a Uniform Real Estate Contract dated May 4, 1973 (the Contract).

Douglas Covington and John Josephson subsequently entered into a written addendum to the Contract granting the Josephsons a right-of-way to the Property across adjacent land owned by the Covingtons. Alice

Covington died in 1981 and Douglas Covington died in 1987, leaving Robert Covington and Mary Whetman as co-personal representatives of the Estate.

Sometime in 1989, a dispute arose between the Josephsons and the Estate regarding the right-of-way. As a result, the Josephson's recorded a Notice of Interest asserting their rights in the right-of-way. In May 1989, the Estate filed the first suit against the Josephsons in Third District Court of Salt Lake County seeking to quiet title to the right-of-way, for damages for slander of title and trespass, and for an injunction restraining the Josephsons from continued use of the right-of-way. The Josephsons counterclaimed requesting that the court quiet title in them to the right-of-way, award them the five shares of water stock, and declare that the Contract was "fully paid and performed by Josephsons, and Josephsons are entitled to conveyance" of the Property.

A bench trial was held before the Honorable Richard H. Moffat, who ruled in favor of the Josephsons and, in a judgment dated December 18, 1991 (Judgment), awarded the Josephsons title to the Property, including the claimed right-of-way, and awarded attorney fees.

Subsequently, on May 8, 1992, the Estate paid the property taxes and water assessments for the years 1989, 1990, and 1991 on the Property and the five shares of water stock consistent with the terms of the Contract.[1] After demand by the Estate, the Josephsons refused to repay the Estate for the taxes and assessments paid.[2]

On July 7, 1992, the Estate filed a second lawsuit in the Third Circuit Court for Salt Lake County, seeking to recover the amounts it paid for taxes and water assessments and attorney fees. Both sides filed motions for summary judgment, and, on February 16,

---

1. The Contract states that:
   In the event the Buyer shall default in the payment of any special or general taxes, assessments or insurance premiums as herein provided, the Seller may, at his option, pay said taxes, assessments and insurance premiums or either of them, and if Seller elects so to do, then the Buyer agrees to repay the Seller upon demand.

2. The Estate paid the taxes and assessments on the Property because it wished to sell real estate it owned adjacent to the Property. Since the Estate's and the Josephson's property were jointly assessed by Salt Lake County, taxes and assessments on both parcels had to be paid so that the Estate could deliver clear title to the purchaser of its property.

1993, the trial court granted summary judgment in favor of the Estate. The trial court denied the Josephsons' subsequent Motion to Alter or Amend Judgment. This appeal followed.

## ISSUES ON APPEAL

We address the following issues on appeal: (1) Is the Estate's action barred by the doctrines of res judicata or collateral estoppel? (2) Was the Contract terminated by the District Court action so as to preclude a claim under it? (3) Were the attorney fees awarded to the Estate excessive? [3]

## STANDARD OF REVIEW

■ Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c). In reviewing a motion for summary judgment, this court considers "all of the facts and evidence presented, and every reasonable inference arising therefrom, in a light most favorable to the party opposing the motion." *Katzenberger v. State,* 735 P.2d 405, 408 (Utah App.1987). Further, because summary judgment presents only questions of law, this court accords no deference to the trial court's ruling and reviews it for correctness. *Pratt v. Mitchell Hollow Irrigation Co.,* 813 P.2d 1169, 1171 (Utah 1991); *Mumford v. ITT Commercial Fin. Corp.,* 858 P.2d 1041, 1043 (Utah App.1993).

## ANALYSIS

### Res Judicata and Collateral Estoppel

The Josephsons assert that the Estate's action is barred by the doctrine of res judicata and/or collateral estoppel.

In *Schaer v. State ex rel. UDOT,* 657 P.2d 1337 (Utah 1983), the Utah Supreme Court set forth the elements of res judicata. In *Schaer,* the court stated:

3. The Josephsons also raise additional issues including collateral attack and the existence of material facts precluding summary judgment. We find these claims lacking in merit and therefore do not address them. *See State v. Carter,*

"In order for res judicata to apply, both suits must involve the same parties or their privies and also the same cause of action; and this precludes the relitigation of all issues that could have been litigated as well as those that were in fact litigated in the prior action."

*Id.* at 1340 (quoting *Searle Bros. v. Searle,* 588 P.2d 689, 690 (Utah 1978)). In addition, "'the first suit must have resulted in a final judgment on the merits.'" *In re J.J.T.,* 877 P.2d 161, 163 (Utah App.1994) (quoting *Madsen v. Borthick,* 769 P.2d 245, 247 (Utah 1988)).

■ Collateral estoppel, or issue preclusion, prevents the relitigation of issues that have once been litigated even though the claims for relief may be different. *Penrod v. Nu Creation Creme, Inc.,* 669 P.2d 873, 875 (Utah 1983). Thus, whereas res judicata prevents a relitigation of identical causes of action or demands, collateral estoppel disallows a relitigation of issues. *Schaer,* 657 P.2d at 1340. The elements of collateral estoppel include:

"(1) Was the issue decided in the prior adjudication identical with the one presented in the action in question?

(2) Was there a final judgment on the merits?

(3) Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?

... [4] Was the issue in the first case completely, fully and fairly litigated?"

*Id.* at 1340–41 (quoting *Searle Bros,* 588 P.2d at 691).

The Josephsons argue that in the first suit, they asked for and received a finding from the District Court that the Contract had been "paid in full." The Josephsons assert that because of this finding, any claim for payments due under the Contract, including a claim for taxes and water assessments, has already been litigated and thus is barred by res judicata. Further, the Josephsons assert that even if res judicata does not apply,

776 P.2d 886, 888–89 (Utah 1989) (stating that appellate courts "need not analyze and address in writing each and every argument, issue, or claim raised").

collateral estoppel applies because the "paid in full" finding at least shows that identical issues were litigated.[4]

◼ However, res judicata and collateral estoppel only apply where the issue "was actually litigated" in the first action, *Aragon v. Clover Club Foods Co.*, 857 P.2d 250, 254 n. 6 (Utah App.1993), or the claim "could and should have been raised in the first action." *Madsen v. Borthick*, 769 P.2d 245, 247 (Utah 1988). The Josephsons have failed to produce any evidence to show that taxes and assessments were actually litigated in the District Court. Therefore, we find that the issue was not "actually" litigated in the prior action, thus precluding application of collateral estoppel.

◼ We must next determine if the claims "could and should have been raised" in the prior action. *Madsen*, 769 P.2d at 247. In their affidavits, David K. Broadbent, the Estate's counsel, and Mary C. Whetman, one of the Estate's co-personal representatives, state that prior to trial of the first suit, the Josephsons, through their attorney, represented to the Estate that they would pay any taxes and assessments regarding the Property. This representation was apparently made again during trial. In his affidavit, John C. Josephson denies that a "stipulation" regarding taxes and assessments was ever entered into at trial, but does not deny that such representations were made either prior to or during trial. Relying upon those undisputed representations, the Estate had no reason to bring a claim for the taxes or assessments in the prior action.

Moreover, the Estate didn't pay the taxes and assessments until May 8, 1992, well after the completion of the prior action. Any claim for reimbursement of the Estate's payment of those taxes and assessments was not "ripe for adjudication" at the time of the District Court action and therefore could not have been brought. *See Andrews v. Utah Bd. of Pardons*, 836 P.2d 790, 794 (Utah 1992).

Taxes and water assessments were never addressed in the prior action. Further, because such claims were not then disputed, they were not ripe and should not be classified as ones that "could and should have been litigated." *Madsen*, 769 P.2d at 247. Thus, the purposes of res judicata and collateral estoppel to limit "parties to one fair trial of an issue or cause," and further to serve such "public interests as 'fostering reliance on prior adjudication, preventing inconsistent decisions, relieving parties of the cost and vexation of multiple lawsuits,' and 'conserving judicial resources,'" *J.J.T.*, 877 P.2d at 162 (quoting *Office of Recovery Servs. v. V.G.P.*, 845 P.2d 944, 946 (Utah App.1992)) are not present here. Therefore, neither res judicata nor collateral estoppel precludes the Estate's action.

### Termination of Contract

The Josephsons assert that because the District Court ruled that the Contract was paid in full, it was thereafter terminated and no longer available to support a claim for taxes, water assessments, or attorney fees.

◼ The Josephsons did not raise this issue until their Motion to Alter or Amend Judgment submitted to the trial court after it granted summary judgment in favor of the Estate. Raising an issue in a post-trial motion—or as is the case here, post-summary judgment—does not preserve that issue for appeal. *Barson v. E.R. Squibb & Sons, Inc.*, 682 P.2d 832, 837 (Utah 1984); *Beehive Medical Elecs. v. Square D Co.*, 669 P.2d 859, 861 (Utah 1983); *LeBaron & Assocs. v. Rebel Enters.*, 823 P.2d 479, 484 (Utah App.1991).[5]

---

4. It appears that the Estate concedes, and we agree, that the first action involved the same parties and that there was a final adjudication on the merits. Thus, the issue narrows to whether identical claims or issues were previously litigated.

5. We note that in *State v. Belgard*, 830 P.2d 264 (Utah 1992), the Utah Supreme Court held that issues raised and dealt with in post-trial evidentiary hearings are preserved for appeal. *Id.* at 265–66. *See also State v. Matsamas*, 808 P.2d 1048, 1053 (Utah 1991) (holding that because trial judge took evidence on and ruled upon a challenge to hearsay evidence at trial—even though the objection was not timely raised—the issue was preserved for appeal). However, we believe *Belgard* and *Matsamas* are inapplicable to this case. Unlike the situation here, the trial court in both cases had the opportunity and chose to take evidence and fully hear the argu-

Thus, we find that this issue was not properly preserved and therefore decline to address it.[6]

## Attorney Fees

The Josephsons next claim that issues of fact exist precluding summary judgment because the trial court failed to hold an evidentiary hearing on the reasonableness of the attorney fees awarded.

■ In *Provo City Corp. v. Cropper*, 28 Utah 2d 1, 497 P.2d 629 (1972), the Utah Supreme Court stated that unless the parties agree otherwise, a trial court must take evidence of the reasonableness of attorney fees and make findings thereon. *Id.* at 630. *See also* Utah Code Jud.Admin. R4–505 (setting forth criteria for affidavits in support of attorney fees). However, trial courts are not required to make specific findings regarding attorney fees where all the relevant facts are undisputed. *Taylor v. Estate of Taylor*, 770 P.2d 163, 168–69 n. 6 (Utah App.1989). Undisputed relevant facts supporting an award of attorney fees includes an unrebutted affidavit. *Freed Fin. Co. v. Stoker*, 537 P.2d 1039, 1040 (Utah 1975).

■ In this case, the attorney fees awarded are supported by the affidavit of David K. Broadbent, attorney for the Estate. Based on our review of the affidavit, we find that it complies with the requirements of Rule 4–505. Moreover, the Josephsons never disputed the affidavit. Therefore, we find that the trial court was not required to take further evidence regarding attorney fees.

## CONCLUSION

The Estate's action is not barred by res judicata or collateral estoppel. Further, the termination of contract issue is not properly before us. Finally, no issues of fact exist regarding the reasonableness of attorney fees. Therefore, we affirm the trial court's grant of summary judgment in favor of the Estate.

JACKSON, J., concurs.

DAVIS, Judge (concurring in the result):

I concur in the majority's result to the extent that defendants should be estopped to assert defenses of res judicata and/or collateral estoppel because of the representations of their counsel in the prior trial, and not because res judicata and/or collateral estoppel would not otherwise apply to the facts of this case.

It is well-settled in this jurisdiction that " ' "[e]stoppel is an equitable doctrine which precludes parties from asserting their rights where *their* actions render it inequitable to allow them to assert those rights." ' " *Dansie v. Anderson Lumber Co.*, 878 P.2d 1155, 1159 n. 10 (Utah App.1994) (quoting *Burrow v. Vrontikis*, 788 P.2d 1046, 1048 (Utah App. 1990) (quotation omitted)). The test for determining whether estoppel is present "is whether there is conduct, by act or omission, by which one party knowingly leads another party, reasonably acting thereon, to take

---

ments raised. In *Belgard*, the trial court granted an evidentiary hearing on the issues. *Belgard*, 830 P.2d at 265. In *Matsamas*, the issues were heard and ruled upon during trial. *Matsamas*, 808 P.2d at 1053. The trial courts thus waived the requirements of Rule 12 of the Utah Rules of Criminal Procedure. *Belgard*, 830 P.2d at 266. However, in this case, the termination of contract issue was not raised until the Motion to Alter or Amend Judgment. The trial court did not take evidence or hold an evidentiary hearing on the issue, but instead simply denied the Motion to Alter or Amend. Thus, the trial judge did not "effectively waive[ ]" the Josephsons' requirement to preserve the issue for appeal. *Id.*

6. Even if the issue were properly before us, the Estate would still prevail. The Josephsons argue that the District Court's ruling that the Contract was "paid in full" terminated the Contract and

any rights under it. We disagree with the Josephsons' characterization of the District Court's ruling. In its Judgment, the District Court conveyed the Property, the five shares of water stock, and the right-of-way to the Josephsons. In its Findings of Fact and Conclusions of Law, the court stated that the Contract was "paid in full." However, the court did not explicitly state that the Contract was terminated. Indeed, it would have been improper for the District Court to do so since the court did not address other issues or provisions under the Contract such as the promise to pay "all taxes and assessments of every kind." The fact that some taxes and assessments were due and owing at the time of the Judgment is a strong indication that the District Court's ruling did not terminate the Contract, but rather was limited to the issues discussed.

some course of action, which will result in his detriment or damage if the first party is permitted to repudiate or deny his conduct or representation." *J.P. Koch, Inc. v. J.C. Penney Co.*, 534 P.2d 903, 905 (Utah 1975) (footnote omitted); accord *Triple I Supply, Inc. v. Sunset Rail, Inc.*, 652 P.2d 1298, 1301–02 (Utah 1982). Moreover,

> "[w]here, as here, the delay in commencing action was induced by the conduct of the party sought to be charged the latter may not invoke such conduct to defeat recovery. An estoppel may arise although there was no designed fraud on the part of the person sought to be estopped. To create an equitable estoppel, 'it is enough if the party has been induced to *refrain* from using such means or taking such action as lay in his power, by which he might have retrieved his position and saved himself from loss'.... 'It is well-settled that a person by his conduct may be estopped to rely upon these defenses. Where the delay in commencing action is induced by the conduct of the defendant it cannot be availed of by him as a defense.'"

*Rice v. Granite Sch. Dist.*, 23 Utah 2d 22, 456 P.2d 159, 162 (1969) (quotation and footnote omitted).

Although the court's opinion does not contain an estoppel analysis, it correctly concludes that, based upon undisputed affidavits, representations were made by defendants to plaintiffs either prior to or during trial to the effect that defendants would pay any taxes and assessments regarding the property. In reasonable reliance on those representations, the Estate would have no reason to assert a counterclaim for the taxes or assessments in the prior action. Having induced the Estate to refrain from pursuing a counterclaim for taxes and assessments, defendants cannot now rely upon the defenses of res judicata and/or collateral estoppel.

In my view, the requirements for res judicata and collateral estoppel set out in the court's opinion are present here and, but for the equitable estoppel created by defendants, would be valid defenses to plaintiff's claim.

Having determined that those defenses are not available to defendant, there is no need to consider the issues of whether the court in

the prior proceeding determined that the contract was terminated or whether plaintiff's claims were ripe for adjudication.