The **UNITED STATES of America, J. Michael Martin,** and **Frederick C. Moore, Plaintiffs,**

v.

**BALD EAGLE REALTY,** a Utah corporation, **Jon Olch, Janet Olch, Henry Sigg,** and **Timothy Lapage,** individually, **Defendants.**

No. 2:95 CV 1058 K.

United States District Court, D. Utah, Central Division.

Oct. 1, 1998.

Stephen J. Sorenson, U.S. Attorneys Office, Salt Lake City, UT, Michael F. Hertz, Alan E. Kleinburd, Justin G. Castillo, U.S. Department of Justice, Washington, DC, Joseph E. Tesch, David B. Thompson, Tesch Thompson & Vance, Park City, UT, Jennifer L. Ross, Hanks & Rooker PC, David N. Sonnenreich, Salt Lake City, UT, Bill Ryan, Eric A. Overby, U.S. Attorneys Office, Salt Lake City, UT, for J. Michael Martin, Frederick C. Moore and U.S., plaintiffs.

Robert R. Wallace, Lisa J. Watts Baskin, Mark J. Williams, Hanson Epperson & Wallace, Richard D. Burbidge, Stephen B. Mitchell, Burbidge & Mitchell, Salt Lake City, UT, for Bald Eagle Realty, Jon Olch, Janet Olch, Henry Sigg and Timothy Lapage, defendants.

## ORDER

KIMBALL, District Judge.

The facts underlying the claims of J. Michael Martin and Frederick C. Moore ("Plaintiffs") have been previously chronicled. *See United States v. Bald Eagle Realty*, 1 F.Supp.2d 1311 (D.Utah 1998). Presently before the Court, and considered in turn in this order, are Plaintiff's motion for partial summary judgment with respect to liability on their claims for tortious interference with prospective economic relations and breach of a real estate broker's duty to deal fairly with prospective purchasers and Defendants Bald Eagle, Jon Olch, Janet Olch, Henry Sigg, and Timothy Lapage's ("Defendants") motion for partial summary judgment regarding Plaintiffs' claim for damages.

## I. STANDARD OF REVIEW

A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure is appropriate when the pleadings, depositions, and affidavits on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The movant bears an initial burden to demonstrate an absence of evidence to support an essential element of the non-movant's case. If the movant carries this initial burden, the burden then shifts to the non-movant to make a showing sufficient to establish that there is a genuine issue of material fact regarding the existence of that element. "An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant." *Wolf v. Prudential Ins. Co.*, 50 F.3d 793, 796 (10th Cir.1995). In applying the summary judgment standard, the factual record and reasonable inferences therefrom are to be examined in the light most favorable to the non-movant. *Id.*

## II. DISCUSSION

**A. Plaintiffs' Claim for Intentional Interference with Prospective Economic Relations.**

 To sustain a claim for intentional interference with prospective economic relations, a plaintiff must establish: "(1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) for an improper purpose or by improper means, (3) causing injury to the plaintiff." *Leigh Furniture and Carpet Co.*

*v. Isom,* 657 P.2d 293, 304 (Utah 1982); *see also Mumford v. ITT Commercial Finance Corp.,* 858 P.2d 1041, 1044 (Utah App.1993).

■ This Court cannot determine as a matter of law that Defendants intentionally interfered with Plaintiffs' potential economic relations or knew such interference was substantially certain to occur. Plaintiffs are correct in arguing both that a defendant need not act with the purpose of interfering with a specific plaintiff and that the wrongfulness of a defendant's conduct is not considered in connection with this element of the claim. Nonetheless, this Court cannot identify the class of persons that Defendants interfered with here as a matter of law. For that reason, Plaintiffs' motion for summary judgment as to liability on this claim is denied.

### B. Plaintiffs' Claim for Breach of a Broker's Duty to Deal Fairly.

■ In Utah, "a real estate agent hired by the vendor is expected to be honest, ethical, and competent and is answerable at law for breaches of his or her statutory duty to the public." *Schafir v. Harrigan,* 879 P.2d 1384, 1390 (Utah App.1994) *(internal quotation marks and citation omitted).* The statutory duties that Plaintiffs would enforce are 12 C.F.R. Part 1606 and Utah Code Ann. § 61–2–11, which deals with grounds for disciplinary actions against realtors. To be precise, Plaintiffs argue that the violations of 12 C.F.R. Part 1606 that Defendants have previously been found to have committed constitute violations of various sections of the *Utah Code* as a matter of law. Given the evidentiary record in this case, that is also a matter for the jury to determine.

Accordingly, and for that reason, Plaintiffs' motion for summary judgment as to liability on this claim is also denied.

### C. Defendants' Motion for Partial Summary Judgment regarding Plaintiff's Damage Claims.

Plaintiffs seek to recover the profits they would have earned from the future development of the property under theories of fraud, tortious interference with economic relations, and breach of a broker's duty to deal fairly with prospective purchasers. Defendants seek a determination that Plaintiffs are not entitled to recover such lost profits as a matter of law under any theory. Specifically, Defendants assert that the only contract or economic relationship that Plaintiffs were precluded from entering into was a contract for the purchase of the property from the Resolution Trust Corporation ("RTC"), and that, as a consequence, Plaintiffs damages, if any, must be measured by the difference between the property's fair market value at the time of the RTC sale and the amount bid by Martin for its purchase.

Examination of Utah law reveals that allowable damages for Plaintiffs' state law claims are not so limited. "Generally, a court will allow recovery for lost profit or other related consequential damages in a fraud action, provided that such damages can be proven with reasonable certainty and are a reasonably foreseeable consequence of the defendant's act." *Ong Internat'l (U.S.A.) Inc. v. 11th Avenue Corp.,* 850 P.2d 447, 457 (Utah 1993). In *Ong,* a businessman fraudulently represented that wooden crypts in a mausoleum were made of cement in order to induce an investor to became a partner with him in the mausoleum's ownership. The Supreme Court upheld the jury's damage award of $1,240,220, representing the investor's initial investment, as well as consequential damages in the amount of $1,165,220, representing the rate of return the investor would have received if the money had been invested elsewhere, as established by the uncontroverted testimony of an expert witness. *Id.*

■ *Ong* makes clear that in Utah the requirements of reasonable certainty and foreseeability serve to limit a fraud plaintiff's recovery. A jury must decide whether the damages sought by Plaintiffs exceed that boundary; given the conflicting evidence, this Court cannot do so as a matter of law in this case.

■ One who is liable for interference with economic relations is liable for "the pecuniary loss of the benefits of the contract or the prospective relation [or] consequential damages for which the interference is a legal cause." *Sampson v. Richins,* 770 P.2d 998, 1007 (Utah App.1989) (quoting Restatement (Second) of Torts § 774A (1979)). The na-

ture of the tort precludes the imposition of judicial limits on recovery of the type sought by Defendants. The tort protects both a party's existing contracts and "interest in prospective relationships not yet reduced to a formal contract (and perhaps not expected to be)." *Leigh Furniture,* 657 P.2d at 302; *see also Leslie Blau Co. v. Alfieri,* 157 N.J.Super. 173, 384 A.2d 859, 865 (N.J.Super.1978) *("The law not only protects one from unjustifiable interference with one's contract by another but it also protects a person's interest in reasonable expectation of economic advantage.").*

Whether, in the absence of interference, a particular prospective relationship was sufficiently likely to develop is a factual question for the jury to answer. The tort "requires a reasonable expectation of entering into a valid business relationship, and not mere wishful thinking. Plaintiff must have a valid business expectancy, and show that defendant intentionally interfered with business opportunities that were commercially reasonable to anticipate." 86 C.J.S. Torts § 46 (1997); see also *Leslie Blau,* 384 A.2d at 865 ("There must be proof . . . that if there had been no interference there was a reasonable probability that the victim of the interference would have received the anticipated economic benefits.").[1]

No Utah case directly addresses the measure of damages for breach of a broker's duty to deal fairly with prospective purchasers. Plaintiffs argue that *Dugan v. Jones,* 615 P.2d 1239 (Utah 1980), *superceded by statute on other grounds,* 846 P.2d 1307 (Utah 1993), indirectly supports the proposition that damages allowed for breach of a broker's duty are no less than damages allowed for fraud. In *Dugan,* property sellers misrepresented the acreage of the parcel they sold and then brought a foreclosure action against the buyers, who had stopped making their mortgage payments upon learning of the deception, depositing the payments into a bank account instead. The buyers filed a counterclaim against the sellers and a

third-party complaint against the sellers' broker, asserting claims against him of fraud, negligent misrepresentation, and breach of a broker's duty to prospective purchasers.

The Utah Supreme Court examined each of the buyers' claims against the broker. The court first reversed the trial court's dismissal of the buyers' claim for breach of a broker's duty, holding that a broker is answerable at law for breaches of his statutory duties to the public. The court then reversed the trial court's dismissal of the buyers' claim for negligent misrepresentation, holding that a broker owes a duty to prospective purchasers to use care and competence in determining the accuracy of information contained in a listing agreement.

The court then considered the buyers' fraud claim against the broker. The buyers' claim arose out of the broker's concealment of conditions in a subordination agreement. The buyers had asked the broker to arrange an agreement with the sellers to release or subordinate from their mortgage a parcel of ground on which the buyers could construct a home. The broker informed the buyers that the sellers had agreed to do so, but said nothing about the conditions the sellers had attached.

The trial court held that the proper measure of damages was the difference between the value of the property as represented and its actual value and found that there was no evidence to award more than nominal damages. The Supreme Court held that the buyers could also recover the increase in the cost of the home they had intended to construct if the subordination agreement had been as represented by the broker, explaining that "[a]lthough the trial court was correct as to the measure of damages, it overlooked the principle of law holding the defrauded party may recover any additional damages which are a natural and proximate consequence of the defendant's misrepresentations." *Id.* at 1250 *(internal quotation marks and citation omitted).*

1. Should Plaintiffs prevail on their claims for fraud and intentional interference with economic relations, Plaintiffs damages are not necessarily equal to Defendants' profits, that is, the amount received by Defendants for the sale of the developed property minus Defendants' costs of con-

struction. Plaintiffs' damages may be measured by the theoretical costs of construction, provided that Plaintiffs' evidence is nonspeculative and otherwise consistent with the legal principles set forth herein.

This Court cannot conclude from the above-summarized discussion in *Dugan* that damages recoverable for breach of a broker's duty are the same as those recoverable for fraud and tortious interference with economic relations. In the absence of direction from a Utah authority, this Court will look to general principles of legal liability. In doing so, this Court has been influenced by and adopts the reasoning of the Wyoming Supreme Court, which considered the issue in *Hagar v. Mobley*, 638 P.2d 127 (Wyo.1981). That court held:

> The liability of real estate agents, brokers and salespersons, as in all actions predicated upon the failure to perform some duty, sounds in tort. In tort cases damages are generally awarded in order to compensate claimants for loss. The measure of damages is the amount which will compensate for all the detriment proximately caused by the breach of the duty.

*Id.* at 139; see also *Watkins v. Karr*, 716 So.2d 399, 401, No. 97–CA–771, 1998 WL 265018, at *4 (La.Ct.App. May 27, 1998) *(analyzing issue in context of determining applicable statute of limitation and concluding that "an action against a real estate agent is in tort, not contract")*. Whether any detriment suffered by Plaintiffs was proximately caused by Defendants is again a matter for the jury.

Accordingly, Defendants' motion for summary judgment with respect to damages is also denied.

### III. DISCUSSION

For the reasons set forth above, the motions for summary judgment of both Plaintiffs and Defendants are denied. Defendants' Motion to Continue Trial is granted.[2]

---

**2.** Ruling on this motion was to have been deferred until after this Court ruled on the pending motions for summary judgment. However, further briefing is unnecessary inasmuch as the currently-scheduled trial date must be vacated to accommodate a criminal trail.